Christian, J.
This is a writ of error to a judgment of the circuit court of the city of Richmond.
*793 The suit was an action of trespass on the case, brought * . ’ . by the plaintiff, Elizabeth Courtney, against the city Richmond, to recover damages for injuries received by in consequence of a fall on one of the streets of said city, produced by an alleged defect on the sidewalk caused by the negligence of the defendant. In the court below the defendant demurred to the plaintiff’s evidence, and the jury found a verdict subject to the demurrer for the plaintiff, and assessed her damages at the sum of $1,500.
And thereupon the court overruled the demurrer, and entered judgment for the amount of damages assessed by the jury.
To this judgment a writ of error was awarded by one of the judges of this court.
The question we have to determine is, -whether, giving full effect to all the evidence introduced by the plaintiff, and all fair and legal inferences to be deduced from the same, such a case is made out as entitles the plaintiff to recover, and fixes liability upon the defendant for injuries received by the plaintiff.
To determine this question it becomes necessary to examine minutely and in detail the evidence produced by the plaintiff.
It was proved by the plaintiff that at the time of the accident—October 12th, 1876—she lived on Leigh street, in the city of Richmond, four squares from the scene of the accident; that her niece was on her death-bed, and Ihe attending doctor—D. Davis—gave a prescription which he said she must have immediately ; that witness would not wait for niece’s husband to return, but started to the drugstore herself for the medicine required; that in going she went on the side of the street opposite to that on which she fell returning; that when she came out of the drugstore she was in a hurry, and about twenty steps from the drugstore she struck her foot against a loose brick in the sidewalk, and fell; that she was stunned for awhile, and *794 when she got up and went home she suffered much pain. . . but did not go after a doctor until 9 o’clock next day, when went to Dr. James’ office, who set her arm ; that the gas was lit in the street lamps at the corner of the street. 1 / some twenty paces off, but the light was behind her; it wag ge^jng dusky at the time, and she could hardly see at all; that she knew of the broken place in the sidewalk, but. was in such a hurry and such trouble about her niece’s. health that she did not think of it; the pavement was broken up, and she fell right in among the loose bricks;. that Some five years ago she had an attack of neuralgia,. which resulted in her partial blindness, but she was cured of that; that she is in her sixty-fifth year; and upon being asked by her counsel to tell the time of day on a clock about twenty-six feet distant, about a foot across the face, could not tell it; and on being asked the color of an inkstand about twelve feet distant, testified that it was blue— which it was; that at the time of the accident, and ever since the marriage of her niece, shortly after the war, she had lived with her, waiting in the house; that she had lived since before the war in the neighborhood, and had been dealing with Mr. Saunders, where she went for the medicine, ever since he started business at that place—a year or more before the accident; that she has no use of her left arm—the broken one—and has to give up sewing, and cannot work; that she is now living with another niece; that she was not in the habit of going out a night— never liked to travel after dark, even when she was a girl; that she used to work in a factory, but since the war only-waited on her niece; that she had passed over the broken place once or twice on other occasions without stumbling.
The plaintiff exhibited her arm to the jury, which had the appearance of stiffness and a large knot at the point of fracture.
And the plaintiff showed to the jury, by Dr. M. L. James, another witness, that the plaintiff came to his of *795 fice about the time specified, with a fracture of the two 1 ] bones—the radius and ulna—of her left lower arm, near the wrist joint; that the fractures were so near the that it was difficult to keep the portions accurately in place by splint; that all fractures near the joint are serious; that the fracture healed slowly, as was to be expected in one 0f her age; that the plaintiff, being an old woman, will probably never regain the use of her arm; that her age'would doubtless contribute to that result; that she was, as he believed, very poor; that he never attended her for any defect of eyesight, and was aware of none; that if there had been any serious defect he would probably have noticed it—his profession inducing him to notice such things more particularly than a layman; that in his judgment the delay in her seeking professional aid had not affected the result.
And the plaintiff showed to the jury, by another witness, Charles W. Epps, that he is, and was at the time of the accident, and for several years before, a captain of police of the city of Richmond, and that his station house is on Brooke avenue, at the corner of Marshall street, and immediately across the street from the point at which the accident happened; that his duty as to such defects was to report the same to the chief of police, and he (the chief) reported them to the city engineer; that he (witness) was acting chief of police at the time and for two weeks afterwards; that he kept no record of his reports, but is satisfied he reported this defect, as he did all cases of needed repair, to the chief; that the defect had continued, he supposed, three or four months; that it consisted of a place in the pavement 3x5 feet, or thereabouts, from which bricks had been removed, and a few bricks were lying about loose in the opening; that he was not certain he reported to anybody, but if he did, it was to the chief—certainly not to the city engineer or city contractor; that the method of repairing streets was to report to the chief of *796 P°^ce» an<^ would report to the city engineer, who notified the city contractor to do the work; that whenever the was dangerous he reported at once to the city engineer as well as the chief of police; that these defects are , . , . , at all times numerous; that within the past week.he had 222 similar defects in his district, (that portion of the city weskof fourth street), and their habit was and is, every three or four months, to make a thorough overhauling of the streets, and make up their report of defects; that this was simply a case of a sidewalk out of repair from use; that there was no excavation, and that he had never heard of anyone else ever stumbling there; that he himself had walked over the place many a time, and never thought it dangerous; that the street—Brooke avenue— had recently been paved and graded for a long dislance, including this portion, and it was necessary to relay the curbing and paving; that the whole sidewalk had to be relaid; and he supposed the contractor, if he knew, was waiting for this general repair, but this is only supposition.
And the plaintiff proved by another witness, Thomas M. Saunders, that he had noticed the defect in the sidewalk before the accident; that it had existed for four or five months, and had told policemen that it ought to be fixed; that he had not reported it at the station house, but to policemen casually in his store; that he could not say it was a dangerous place, but thought some one might fall there and get hurt, and had so told the policemen; that it was repaired thirty or sixty days after the accident, and that he never heard of any other accident there; that he remembered seeing Mrs. Courtney in his store that evening, but •knew nothing of the accident; that he observed no defect in her eyesight.
And the plaintiff showed by William J. Orange, another witness, that he is and was at the time a policeman of the city of Richmond, belonging to the district where the *797 accident occurred ; that no one ever called his attention to . this broken place in the sidewalk, but that he had himself noticed it; that it consisted of a few displaced bricks no hole; that it was not calculated to trip any one who took care, for Brook avenue at that point was a great thoroughfare, and no one else that he ever heard of had tripped there; that he never reported it to anybody, as he did not think it at all dangerous.
And the plaintiff further showed by another witness, William Baldwin, that he was the husband of the plaintiff’s niece; that the plaintiff had lived in his family for many years, waiting on his wife and looking after his children ; that he had often noticed the defect in the sidewalk, and having to pass it every day, he used to go down the street on the other side to avoid it; that the bricks were knocked about and the sand underneath scattered, he supposed, by boys playing at the spot. On the night in question when he came home he found the plaintiff suffering very much, and much troubled in mind as well as body: that he had to get another niece to come and wait upon his wife, who died some six weeks after, and in the following July broke up house, when the plaintiff went to live with another niece; that since his marriage the plaintiff had lived with him, doing no work, except as stated, and after the accident she could not do this work; that he was willing to give her support for the work she did. She was of great use to him, and after the injury she could do no work; that he had to break up housekeeping because she was of no further use to him ; that she is now living on the charity of another niece.
This is all the evidence introduced by the plaintiff, and we have to determine, upon the defendant’s demurrer to this evidence, whether such case is made out as entitles the plaintiff to recover. In determining this, upon well recognized principles repeatedly declared by this court, we must give full credit to the'plaintiff’s evidence as true and *798 uncontradicted, and also such fair and legal inferences as a ... ° jury might draw from the facts proved. But conceding the plaintiff the benefit of these rules, I am of opinion tha,t the defendant, the city of Richmond, cannot be held . . ’ ’ liable in damages for the injuries received by the plain-
In the first place, it is to be remarked that there is no express statute which imposes upon the city of Richmond in express terms the duty of keeping its streets in any prescribed order, or declaring its liability for a failure so to do.
In the absence of any express statute, the only responsibility for which the city can be held to account, which aris.es from the implied liability of all municipal corporations who have conferred upon them powers respecting streets and sidewalks within their limits, is that duty which they owe to the public to keep the same in a safe condition for use in the usual mode by travelers.
A municipal corporation is not an insurer against accidents upon its streets and sidewalks.
Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day. It is not to be expected, and ought not to be required, that a city should keep its streets at perfectly level and even surface. Slight obstructions, produced by loose bricks in the pavement, or by the roots of trees which may displace the pavement, from the very nature of things cannot be prevented. And so there cannot be perfect uniformity of á ■ level surface where curbstones and culverts are necessary to be constructed on the streets. In a large city, with many miles of paved streets, it must often happen from the very nature of the material out of which the pavement is constructed, that the bricks from the very wear and tear of the use to which they are subjected, will become broken *799 and displaced so as to cause the fall of a person not carer . ful in walking over them. Certainly if the obstructions are of such a character as those indicated, and which not cause the fall of a person exercising ordinary care, the city in such case could not be held liable.
It is essential to such liability that the plaintiff should show reasonable and ordinary care to avoid the accident, or, in other words, was free from any such fault or negligence on his or her part as will in actions for negligence defeat a recovery. (See Dillon on Corporations, ■.§ 789, and numerous cases cited in notes).
The defect in the pavement for which the city is sought to be held liable for negligence is described by various witnesses for the plaintiff.
The plaintiff herself described it as a broken place in the sidewalk.and says that she struck her foot against a loose brick in the sidewalk and fell. She says further, that the pavement was broken up and she fell in among the loose bricks. Another witness, Charles W. Epps, then -captain of police, describes the defect as follows: “It consisted of a place in the pavement 3x5 feet or thereabouts, from which bricks had been removed, and a few bricks were lying about loose in the opening;” * * * “there was no excavation, and that he had never heard of any one else stumbling there; that he himself had walked over the place many a time and had never thought it dangerous.”
Policeman Orange describes the defect complained of as follows: “ It consisted of a few displaced bricks and no hole; that it was not calculated to trip any one who took care; that that point on Brooke avenue was a great thoroughfare, and that no one else that he ever heard of was ever tripped there; that he had never reported it to any one as he did not think it at all dangerous.”
Another witness, William Baldwin, nephew of the plaintiff, describing this defect in the pavement says, that “the *800 bricks were knocked about and the sand underneath scattered, he supposed by boys playing at the spot; that he had this defect in the sidewalk, and used to go down jbe street on the opposite side to avoid it.”
, . The only other witness said he had noticed this defect in ^ but he could not say that it was a dangerous place but thought that somebody might fall there and get hurt.
I do not think that upon this testimony, and giving full effect to the strict rules applicable to a demurrer to evidence, the plaintiff has made out such a case of negligence on the part of the city as will render it liable in damages for the injuries received by her fall. Mrs. Courtney in her hurry and distress in going to the drugstore on the night of the accident to procure medicine for her dying niece, might instead of striking her foot against a loose brick on the pavement, have well, by mere accident, have stumbled over a curbstone or cellar door or any other uneven projection common in all streets and have met with the same unhappy accident and injury, for which no one could say that the city was liable in damages.
But if it be conceded that the defect in the pavement, as proved by the plaintiff’s evidence, was of such a character as to bind the city, for negligence, yet in my opinion the plaintiff cannot recover. For, aecording to her own evidence, she well knew of the broken place in the sidewalk where her fall occui’red, and went on the opposite side of the street in going to the drugstore to avoid it. Knowing the defect, she might, with ordinary care have avoided the defective sidewalk by simply passing on the same side of the street on which she had walked to the drugstore. Reasonable care and diligence on her part would have prevented the injury. The law is well settled that it is always essential to fix liability for injuries received by accident that the plaintiff should use reasonable and ordinary ■care to avoid the accident.
*801 • The party complaining of injury caused by the negligence of another cannot recover, if it appears that by want of ordinary care and prudence on his part, he directly to the iniury.
ttti . , . • , „ Where negligence is the issue, it must be a case oí unmixed negligence to justify a recovery. Dillon on Corporations, § 789, and cases there cited. Toledo and Wabash R. R. Co. v. Goddard, 25 Ind. R. 185; and also Judge Burk’s opinion not yet reported in Danville R. R. Co. v. Morris.
Upon the whole case I am of opinion that the judgment of the circuit court is erroneous and must be reversed.