Syllabus.

# Richmond.

## CITY OF CHARLOTTESVILLE V. JONES.

### November 14, 1918.

1. BRIDGES—*Municipal Corporations—Duty of City.*—It is the duty of a city to use reasonable care to keep and maintain a bridge, which forms part of one of the city streets, in good and sufficient repair to render it reasonably safe for all persons exercising ordinary care and prudence in passing on or over it.

2. BRIDGES—*Municipal Corporations—Duty of City—Hand-Rail.*—In the instant case, there had been a hand-rail on the north side of the bridge for many years, as was known to the plaintiff, but for about three weeks prior to and at the time of the accident, unknown to the plaintiff, such hand-rail was absent.

    *Held:* That the fact that the defendant city allowed the hand-rail to remain off the bridge for this period, without any excuse being shown therefor, was sufficient evidence to warrant the jury in finding the city guilty of negligent breach of its duty, and the verdict of the jury for the plaintiff, therefore, concluded that question.

3. BRIDGES—*Injury to Pedestrian—Proximate Cause—Case at Bar.*—In the case at bar, the evidence established that the negligence of the city in not providing a hand-rail on one side of the bridge was the proximate cause of plaintiff's injury, while plaintiff was not guilty of contributory negligence.

4. BRIDGES—*Injury to Pedestrian—Contributory Negligence—Conclusiveness of Verdict of Jury.*—Where plaintiff brought his action for injuries sustained by stepping from a bridge at night owing to the absence of a hand-rail, the determination of the question of whether plaintiff was guilty of contributory negligence in not observing his nearness to the edge of the bridge and the absence of the hand-rail and in walking off the bridge as he did, depended upon the determination of the controverted question of fact as to what was the condition of light or darkness upon the bridge at the time of the accident. There being a conflict in the testimony on this subject, ordinarily the verdict of the jury would admittedly conclude the question.

5. BRIDGES—*Injury to Pedestrian—Contributory Negligence—Conclusiveness of Verdict of Jury—Incredible Facts.*—But in the

case at bar the city invoked against the verdict of the jury the well-established rule that "courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible," and contended that as there was a 500 candle power arc light located at from 100 to 210 feet from the point of the accident behind the plaintiff as he went upon the bridge, that the Supreme Court of Appeals should take judicial notice of the fact that the testimony of the plaintiff was incredible, when he stated that it was so dark that he did not know that he was at the northern edge of the bridge.

*Held:* That the position of the city ignored the facts that the night was damp and cloudy, that plaintiff as he came upon the bridge was faced with a light which shone into his eyes and that the arc light was behind the plaintiff, all of which facts were for the consideration of the jury, and which they, having viewed the scene of the accident under conditions nearly alike those which existed on the night of the accident, were in a better position than the Supreme Court of Appeals to weigh and consider. This was not a case where an admitted fact, or the testimony for a party to the cause, disclosed a physical fact which is irreconcilable with some position taken in another part or parts of such testimony.

6. BRIDGES—*Injury to Pedestrian—Instructions.*—In an action for injuries sustained by a pedestrian when he fell from a bridge owing to the absence of a hand-rail, an instruction that the city was "bound to use reasonable care and precaution to keep and maintain its streets, bridges and sidewalks in good and sufficient repair to render them reasonably safe for all persons exercising ordinary care and prudence, passing on or over the same, and if the jury believe from the evidence that the defendant, the city of Charlottesville, failed to use all reasonable care and precaution to keep its bridges and sidewalks in such repair and that the injury complained of resulted from that cause," they should find for plaintiff, is not defective in the use of the word "all" as descriptive of the "reasonable care and precaution," which the instruction mentions.

7. BRIDGES—*Contributory Negligence—Prior Knowledge of Locality.*—In an action for injuries caused by a fall from a bridge, the court instructed that if the jury believed that the injury complained of resulted from a failure of the city to use reasonable care and precaution to keep its bridges and sidewalks in good and sufficient repair, and that the plaintiff sustained damage thereby, whilst exercising such a degree of care and caution as under the circumstances might reasonably be expected from a man of reasonable care and prudence, then plaintiff was entitled to recover.

*Held:* That this instruction was not erroneous in that it allowed the jury to ignore the prior knowledge of the plaintiff of the situation and permitted the plaintiff to recover as if he were in the position of an ideal man exercising reasonable care and prudence, who is referred to in this instruction, although such ideal man may have had no prior knowledge of the situation. The words, "under the circumstances," confined the jury to the consideration of the instant case in which there was no dispute that the plaintiff had prior knowledge of the locality. Whether he had prior knowledge of the defect in the bridge—the absence of the hand-rail—which rendered the crossing of the bridge in the night time dangerous, was a question for the jury and was or was not one of the "circumstances" in the case as they might find to be the fact.

8. BRIDGES—*Injury to Pedestrian—Instructions—Instruction Cured by Other Instruction.*—In an action against the city for injuries incurred by a pedestrian in a fall from a bridge, an instruction that where a railing on the side of a bridge upon one of the streets of a city is necessary for the safety of travelers, the want of such railing is a defect in the highway for which the city is liable, is not erroneous as imposing upon the city an absolute duty to provide all things necessary for the safety of travelers, where when read together with another instruction there could have been no misconception of it by the jury.

9. ASSIGNMENTS OF ERROR—*Consideration—Points not Raised by Assignments—Instructions.*—Where an instruction is not free from all exception, but is not open to the objection urged against it in the assignments of error, the objection made in the assignments of error is the only objection which the Supreme Court of Appeals will consider.

10. BRIDGES — *Instructions — Instructions Read Together.*—In an action for injury to a pedestrian who fell from a bridge, an instruction that if the jury believed that the plaintiff had been permanently injured by reason of the accident he had the right to recover prospective as well as past damages, is not erroneous because the scope of the jury's inquiry in ascertaining prospective damages was in no way defined, where another instruction directed that if the jury should find for the plaintiff they might take into consideration any bodily injuries which he might have sustained and any physical pain he might have suffered.

11. CONTRIBUTORY NEGLIGENCE—*Instructions—Instructions Read Together.*—In an action against a city for injuries sustained from falling from a bridge defendant requested the court to instruct the jury that while the burden of proof of contributory negligence is in general upon the defendant, yet if the plaintiff's evidence discloses his own contributory negligence or it may be

inferred from all the circumstances in the case, it bars his recovery no matter where the burden rests. The court modified this instruction and it was claimed by defendant that as modified the instruction failed to tell the jury that contributory negligence barred recovery and left defendant with no *general* instruction on that point.

*Held:* That there was no merit in this contention, as the court gave other instructions, not *general* instructions it is true, but specific instructions having reference to all the evidence in the case on which the defendant relied, or could rely, to show contributory negligence of the plaintiff, and which specifically told the jury that if they found certain facts that the plaintiff was guilty of contributory negligence and could not recover. Hence, the giving of a general and abstract instruction on the subject of contributory negligence was unnecessary.

12. BRIDGES—*Hand-Rail—Instructions.*—In an action against a city by a pedestrian for injuries sustained from a fall from an unguarded bridge, defendant requested an instruction that if the jury believe that it was obvious to a reasonable man that the rail on the bridge referred to in the evidence was missing then it became the duty of the plaintiff to look out for and guard against the occurrence of any accident to him at that point. The court modified this instruction by inserting the words "if he knew or ought to have known of this" after the word "plaintiff."

*Held:* That these words were properly inserted.

13. BRIDGES—*Instructions—Age and Activity of Party Injured—Contributory Negligence.*—In an action for injuries against a city occasioned by a fall from a bridge, defendant asked for an instruction that the old age of the plaintiff did not relieve him of his duty to use ordinary care in passing along the streets, but if by old age his activity has been impaired, that fact imposes upon him the duty of using greater precaution than he would otherwise have to use.

*Held:* That as there was no evidence in the case tending to show that any want of activity on the part of the plaintiff contributed to the accident, it was not error to refuse the instruction. Even if there had been such evidence it might have been error to have given such instruction, because it was upon the subject of the weight of evidence and singled out and emphasized one circumstance which should have been considered by the jury along with all the other circumstances in the case. That it embodied a correct abstract statement of the law did not make it a proper instruction to the jury. Other instructions in the case left no room for the jury to entertain the view that old age, or anything else, relieved the plaintiff of the duty to exercise ordinary care.

14. CONTRIBUTORY NEGLIGENCE—*Inattention or Forgetfulness.*—The general rule is, that inattention to or forgetfulness of a well-known danger or peril will not excuse a failure to avoid it.

15. CONTRIBUTORY NEGLIGENCE—*Inattention or Forgetfulness.*—But where no question of the assumption of risk is involved, but only a question of contributory negligence (as in the instant case), on principle, inattention or failure of memory would not be contributory negligence, if under all the circumstances of the case it was legally excusable. And it is so excusable under certain circumstances, as is expressly held by the authorities— as where the plaintiff has his attention diverted by such a cause, or causes, as would ordinarily induce such forgetfulness or inattention in an ordinarily prudent or careful person in the same or in a similar situation. And there are other circumstances which may take a case of lapse of memory or lack of attention from under the operation of the general rule mentioned.

16. CONTRIBUTORY NEGLIGENCE—*Inattention or Forgetfulness.*—The inquiry concerning whether a failure of memory, or inattention, is such contributory negligence on the part of a plaintiff as will bar his recovery, is not different, in legal principle, or in practical application, from the inquiry as to whether any other act of the plaintiff constitutes such negligence, and it is to be measured by the same standard applicable to all other acts thus drawn in question, namely, by the standard of the action of the ideal man, which has been fixed upon by the law, to-wit, the action of the ordinarily prudent or careful person under the same or similar circumstances.

17. CONTRIBUTORY NEGLIGENCE—*Inattention or Forgetfulness—Instructions.*—An instruction in an action for injuries caused by a fall from a bridge, due to the absence of a hand-rail, which, in effect, told the jury that there could be no legal excuse for a failure of memory, or for inattention, to a once known fact, would be error. In the instant case it was a question of fact for the jury to determine whether the plaintiff was negligent in his inattention to or forgetfulness of the absence of the hand-rail, if they believed from the evidence that he had prior knowledge of its absence.

Error to a judgment of the Corporation Court of city of Charlottesville. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

In this action the defendant in error, who was plaintiff in the court below (and will be hereinafter referred to as plaintiff), obtained in such court a verdict and judgment thereon for damages for injuries sustained in falling from a bridge which constituted a part of one of the streets of the defendant city.

The gravamen of the action is that there was no hand-rail on the north side of the bridge. The absence of such hand-rail is alleged to have been the proximate cause of the plaintiff's injury.

There were two main issues, (1) whether the city was guilty of negligence, which was the proximate cause of the plaintiff's injury, in not providing such hand-rail at the time of the accident; and if so, (2) whether the plaintiff was guilty of contributory negligence which would bar his recovery.

### THE MATERIAL FACTS.

Regarding the evidence as we must do under the statutory rule on the subject, the following are considered the material facts of the case:

The accident occurred after nightfall about 8:15 P. M. on February 25, 1916. The bridge crosses a small stream. The width of the bridge from side to side was thirty-two feet ("as wide as the street," according to the testimony of one of defendant's witnesses, which is supposed to refer to the used portion of the street), while the span or length of it was only twelve feet. The bridge is a part of Garrett street, which runs approximately east and west. It is located within, but near the corporate limits of said city, being about thirty-five feet west of the Scottsville road, into which Garrett street, at its eastern end, enters. The Scottsville road passes obliquely across the eastern end of Garrett street.

Garrett street, from about the western end of the bridge

to the Scottsville road, is not straight, but turns slightly to the southward from that point and curves in that direction to its junction with the Scottsville road; so that the bridge itself is curved, "cattercornered" or "skow-wowed," as described by witnesses, causing it to curve southward from the western to the eastern end of the bridge. That is to say, a traveler walking from the said city along Garrett street toward the Scottsville road, having entered upon the bridge near its northern side, if he continued straight ahead, in the absence of a hand-rail to divert his progress, would walk off the northeastern corner of the bridge into the channel of the stream below.

There had been a hand-rail on the north side of the bridge for many years, as was known to the plaintiff, but for about three weeks prior to and at the time of the accident, unknown to the plaintiff, such hand-rail was absent.

The plaintiff was familiar with the bridge and its curved shape, having crossed it numerous times. He was walking from the city along Garrett street toward the Scottsville road when the accident occurred. It had recently rained and he was walking along the northern edge of the street to keep out of the mud. The western end of the bridge was covered with dirt, washed down-hill from the unpaved street by rains from time to time, to about midway of the bridge which deadened the sound of plaintiff's feet upon it so that he did not know that he was on the bridge until he passed over the dirt covered part of it and was nearly over it. When he then realized that he was on the bridge, he testifies that, "It was * * a very dark night * * dark of the moon and very cloudy * *. It was so intensely dark that I couldn't see anything, only the light in front of me where the light shone out of the window" (of Jack Allen's store). * * "I didn't know that I was at the edge of the bridge. * * there was a path that led right from Jack Allen's store and on the inside" (of the store)

"there was a light from the window that sort of misled me and caused me to step off, I stepped off with my right foot. I was going along the side and stepped off with that foot (indicating right foot) and as I went down I grabbed that post in the corner and it kept me from falling in the water. * * I found I was on the bridge and saw that path on the opposite side. I could see that from the lights in Jack's store and that is what led me off of it. * * I was as careful as I could be. I couldn't have wanted to step off there. I didn't do it purposely I am sure. Q. What did you do to guard yourself from that? A. Why, as I tell you, I started, after I had taken one or two steps, and found I was on the bridge, I struck for this path. You can take the jury down there and show it to them. * * If I had known the hand-rail was off, chances are that I would have kept further in the middle of the street, but I didn't know it was off. * * If there had been a hand-rail there I wouldn't have gone off. As I had the situation in mind I knew I was on the bridge and I know there was a hand-rail there and I started for that path after I saw it and I knew there had been a hand-rail there and I made for that path as I told you. Q. And you knew the path was clear off the line of the street? A. No, sir. Q. You knew if the hand-rail had been there you couldn't have gotten to that path? A. I couldn't have gotten to the inside of it if it had been there and if it had been there I would have had to follow the bridge, but as it was I stepped right out at the far corner of the bridge right among a lot of rocks. Q. And if you had gone a little to the right of the post you never would have stepped off? A. No, if I had gone, I don't suppose if I had gone two feet further to the right I would have stepped off the bridge as I did. * * I couldn't see. I didn't know that I was at the edge of the bridge."

There was testimony to show that the plaintiff by passing near and over the bridge recently prior to the accident had

87

the opportunity of observing the absence of the hand-rail; but he testified positively that he had not observed such absence and thought it was there.

As to whether he thought of the hand-rail at all at the very time of the accident, the plaintiff testified, "Really, I can't say I was thinking about the hand-rail. * * I was looking for a good place to step."

Jack Allen's store fronted towards the bridge, but the store front was some four to twelve feet north of the north-eastern corner of the birdge, as variously estimated by witnesses for plaintiff, and a path extended from the front of the store to a point within a few feet of the north side of the bridge, near its northeastern corner, and passed thence along parallel with the northern side of the bridge to and around the eastern side of a post, which stood at the northeastern corner of the bridge, and thence into Garrett street, at such corner of the bridge. The point at which the plaintiff stepped off the bridge and fell, was between the bridge side and the angle of the path aforesaid, where it turned, within a few feet of the northern side of the bridge, and passed thence towards the post as aforesaid. There was an opening between this turn of the path and the bridge-side, with which the plaintiff was familiar and across which he had seen children jump from the path to the bridge, prior to his accident. But he testified that it was so dark that at the time of the accident he could not see the path at that turn, and that he could see that portion of the path only which was up near the front of Jack Allen's store, and that locating his position relative to the path as he saw that portion of it, he mistook his location and so stepped off the bridge, when he thought he was stepping on the path where it passed around the east side of the post and there reached the bridge. In other words, he thought he had reached and was upon the eastern end of the bridge, and had but to step upon the path thereat, when in fact he lacked a few feet of having reached that point on the bridge.

There is a sharp conflict in the evidence for plaintiff and for the city, as to the amount of light upon the bridge at the time of the accident. The testimony for the city is to the effect that there was a standard arc-light, of 500 candle power, which hung in the centre of Garrett street at the intersection of Fifth street therewith, a point variously estimated by the witnesses as from "a block" (210 feet) as estimated by one of plaintiff's witnesses, or 175 ft. or 150 ft., or 152 ft. to 100 feet, as estimated by witnesses for the city, west of the bridge which shone upon the bridge and so lighted it, even in the absence of any electric light on the corner of Jack Allen's store, that a traveler upon it could see to pick up a match or other small object, lying on it; which, if true as of the night of the accident, would have made the northern side of the bridge and the absence of the hand-rail readily and perfectly apparent to the plaintiff. There was also testimony for the city, to the effect that there was an electric light on a bracket at the corner of Jack Allen's store. There was also such testimony tending to show that that electric light was lighted at the time of the accident and also shone upon the bridge.

The plaintiff, however, and one of his witnesses, testified positively that the electric light on the corner of the said store was not lighted at the time of the accident. Plaintiff and one of his witnesses also testified to the character of the night, being without moon, cloudy, with some rain, and very dark, so that plaintiff could not see where he was on the bridge when he got upon it and was unable to observe the northern edge of the bridge or the absence of the hand-rail. And the witnesses for the city, who testified to the effect of the arc-light in lighting the bridge, did so, for the most part, from their observation of it a few nights before the trial of the case, when they visited the scene of the accident for the purpose of seeing how much they could see upon the bridge by aid of the arc-light aforesaid, and they

testified, in substance, that while there was no moon, the night on which they made such observation was a starry night, unusually bright and clear. The other witnesses for the city who testified to the light on the bridge observed on other occasions were not so definite as to the brightness of the light there. Moreover, the testimony does not show that any of these witnesses made their observation by approaching the bridge and going upon it with their back to the arc-light and with the light from Allen's store window shining in front of them, as was the case with plaintiff at the time of the accident.

There was a view by the jury on a cloudy night, the jury having expressed a desire to view the scene of said accident under the same conditions as nearly as posible and at the same time of night, that the accident took place, such a view was had. ·

The action of the court below in giving and refusing instructions was as follows:

The court gave the following instructions at the request of the plaintiff (with certain modifications not needful to be noted here) :

### Plaintiff's Instruction No. 1.

"The court instructs the jury that the defendant, the city of Charlottesville, is bound to use reasonable care and precaution to keep and maintain its streets, bridges and sidewalks in good and sufficient repair to render them reasonably safe for all persons exercising ordinary care and prudence, passing on or over the same, and if the jury believe from the evidence that the defendant, the city of Charlottesville, failed to use all reasonable care and precaution to keep its bridges and sidewalks in such repair and that the injury complained of resulted from that cause, as charged in the declaration, and that the plaintiff sus-

tained damage thereby, whilst exercising such a degree of care and caution as under the circumstances might reasonably be expected from a man of reasonable care and prudence, then he is entitled to recover of the defendant in this suit such an amount as the jury may ascertain from the evidence, not exceeding five thousand dollars."

### Plaintiff's Instruction No. 2.

"The court instructs the jury that where a railing on the side of a bridge upon one of the streets of a city is necessary for the safety of travelers, the want of such railing is a defect in the highway for which the city is liable, and whether a railing was necessary at the point where the plaintiff was injured, is a question for the jury to determine, and if they believe from the evidence that such a railing was necessary on the side of the bridge at which the said plaintiff was injured and that the accident to the said plaintiff was caused by the failure to have such a railing, then they must find for the plaintiff and assess his damages at such an amount as they may deem he is entitled to from the evidence, not exceeding five thousand dollars, provided plaintiff exercised due care for his own protection."

### Plaintiff's Instruction No. 4.

"The court instructs the jury that if they find for the plaintiff, in estimating his damages they may take into consideration any bodily injuries which he may have sustained by reason of the accident complained of, and any physical pain he may have suffered thereby, and assess his damages at such a sum as they may think just and proper under the evidence in this case, not exceeding the sum of $5,000.00 claimed in the declaration."

### Plaintiff's Instruction No. 5.

"The court further instructs the jury that if they believe from the evidence that the plaintiff in this cause has been permanently injured by reason of the accident complained of, he has the right to recover prospective as well as past damages, not exceeding five thousand dollars, the amount claimed in the declaration."

### Plaintiff's Instruction No. 6.

"The court instructs the jury that where a hand-rail has been upon a bridge within the city limits and kept up by the city a passenger who has known of the existence of that hand-rail and who did not know that it was missing, has a right to depend upon his knowledge of the previous existence of this hand-rail in crossing the bridge, unless he knows, or by the exercise of reasonable care might have known, that it was missing."

The giving of numbers (1), (2) and (5) of such instructions is assigned by the defendant city as error.

The following were the instructions offered by the defendant city and the action of the court thereon.

### Defendant's Instruction No. 1.

"The court instructs the jury that the burden of proof is upon the plaintiff to establish by a preponderance of the evidence that the defendant failed to exercise reasonable care to keep the bridge referred to in the evidence in a reasonably safe condition and that such failure was the proximate cause of the plaintiff's injury and unless he has sustained that burden they, the jury, shall find for the defendant."

### Defendant's Instruction No. 2.

"The court instructs the jury that the law does not require a municipal corporation to respond in damages for every injury that may be received on a public street. The corporation is not required to have its streets so constructed as to secure absolute immunity from danger in using them; nor is it bound to employ the utmost care and exertion to that end. Its duty is only to use reasonable care to see that its streets are reasonably safe for persons exercising ordinary care and prudence."

### Defendant's Instruction No. 3.

"The court instructs the jury that while the burden of proof of contributory negligence is in general upon the defendant yet if the plaintiff's evidence discloses his own contributory negligence or it may be inferred from all the circumstances in the case, it bars his recovery no matter where the burden rests. *City of Winchester* v. *Carroll*, 99 Va. 737, 40 S. E. 37."

### Defendant's Instruction No. 4.

"The court instructs the jury that it was the duty of the plaintiff to exercise ordinary care to prevent any injury whatever to himself and he was guilty of contributory negligence if he was himself the author of any part of the injury of which he now complains, or if by the exercise of reasonable care upon his part, he could have avoided the consequences of the negligence ascribed to the defendant, and if the jury shall so believe they shall find for the defendant. *Watkins* v. *Danville*, 97 Va. 713, 34 S. E. 884."

*Defendant's Instruction No. 5.*

"The court instructs the jury that where it is apparent and obvious that the street is dangerous then travelers along such street are under obligation to observe the dangers therein and to give to their passage along such streets greater care and observation than would otherwise be necessary, and if the jury believe that it was obvious to a reasonable man that the rail on the bridge referred to in the evidence was missing then it became the duty of the plaintiff to look out for and guard against the occurrence of any accident to him at that point, and if the jury believe he did not do so, they, the jury, should find for the defendant."

*Defendant's Instruction No. 6.*

"The court instructs the jury that while travelers along the public streets are not bound to keep their eyes at every moment upon the street, they are bound to exercise reasonable and ordinary care to avoid danger and if the jury believe that the condition of the bridge referred to in the evidence was such that an ordinarily prudent man would have realized the necessity of care to avoid injury to himself, and that the plaintiff failed to observe necessary precautions to avoid injury, then, even though the city was negligent, he was guilty of contributory negligence and cannot recover."

*Defendant's Instruction No. 7.*

"The court instructs the jury that although they may believe the street at the point where the plaintiff fell was dangerous, yet if they believe from the evidence that the south side of the bridge referred to in the evidence, was

reasonably safe, and that an ordinarily prudent man exercising ordinary care under the circumstances would have observed that the rail on the north side of the bridge was off, and would not have gone there, then it was the duty of the plaintiff to avoid the north side and if he did not do so, he cannot recover."

### Defendant's Instruction No. 8.

"The court instructs the jury that old age of the plaintiff did not relieve him of his duty to use ordinary care in passing along the streets, but if by old age his activity has been impaired, that fact imposes upon him the duty of using greater precaution than he would otherwise have to use."

### Defendant's Instruction No. 9.

"Negligence as used in the instructions is want of ordinary care. And the care, which is ordinary care, varies according to circumstances. The care which under certain conditions is sufficient to be ordinary care, under other conditions may not be sufficient. Greater caution is demanded on the part of the plaintiff according as the circumstances demanded greater caution. He is bound to use only ordinary care, but he is bound to use such ordinary care, and ordinary care is that care which a man of ordinary prudence would use under all the circumstances proved in the case."

### Defendant's Instruction No. 10.

"The court instructs the jury that a person using a street known to him to be defective and on that account dangerous, is bound to use care commensurate with the known

88

danger, and if the jury believe from the evidence that the plaintiff knew that the rail at the north side of the bridge in question was missing, and failed in passing over the bridge to use such care as a person of ordinary prudence would have used under the circumstances, they, the jury, must find for the defendant."

### Defendant's Instruction No. 11.

"The court instructs the jury that if they believe from the evidence that the plaintiff knew that there was no rail or barrier along the bridge referred to, but failed at the time of the accident to remember such fact, and fell through inattention, they must find for the defendant. 99 Va. 734 40 S. E. 37."

Thereupon the court gave instructions marked defendant's instructions Nos. 1, 2, 6, 9 and 10, but refused to give defendant's instructions marked Nos. 3, 4, 5, 7 and 8 and 11. And the court gave in lieu of instruction No. 3, an instruction reading as follows:

### Defendant's Instruction No. 3. (Modified.)

"The court instructs the jury that the burden of proving the defendant guilty of negligence rests upon the plaintiff and that if the defendant seeks to relieve itself of liability by reason of the plaintiff having been guilty of contributory negligence, the burden of proving such contributory negligence rests upon the defendant unless such contributory negligence was disclosed by the plaintiff's evidence, or would be fairly inferred from the circumstances."

And modified instructions Nos. 5 and 7 and 11 so as to read as follows:

*Defendant's Instruction No. 5. (Modified.)*

"The court instructs the jury that where it is apparent and obvious that the street is dangerous then travelers along such street are under obligation to observe the dangers therein and to give to their passage along such streets greater care and observation than would otherwise be necessary, and if the jury believe that it was obvious to a reasonable man that the rail on the bridge referred to in the evidence was missing then it became the duty of the plaintiff if he knew or ought to have known of this, to look out for and guard against the occurrence of any accident from the want of such rail, and if the jury believe he did not do so, they, the jury, should find for the defendant."

*Defendant's Instruction No. 7. (Modified.)*

"The court instructs the jury that although they may believe the street at the point where the plaintiff fell was dangerous, yet if they believe from the evidence that the south side of the bridge referred. to in the evidence was reasonably safe, and that an ordinarily prudent man exercising ordinary care under all the circumstances would have observed that the rail on the north side of the bridge was off, and would not have gone there, then it was the duty of the plaintiff to avoid the north side, if he knew or by exercise of ordinary care might have known it was dangerous, and if he did not do so, he cannot recover."

*Defendant's Instruction No. 11. (Modified.)*

"The court instructs the jury that if they believe from the evidence that the plaintiff knew that there was no rail or barrier along the bridge referred to, but failed at the time of the accident to remember such fact, and fell through

inattention, they must find for the defendant, provided an ordinarily prudent person under similar circumstances should have remembered it."

The refusing of defendant's instructions numbers (3) and (4) and the refusing to give as offered and the modifying defendant's instructions numbers (5), (7) and (11), are assigned as error by said city.

Further: There was a motion of the city to set aside the verdict of the jury as contrary to the law and the evidence, which was over-ruled by the trial court, and that is the remaining assignment of error by said city.

*Allen & Walsh,* for the plaintiff in error.

*Duke & Duke,* for the defendant in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

The assignments of error raise the questions which will be passed upon in their order as stated below.

1. Was the city guilty of such negligence in not providing a hand-rail on the northern side of the bridge that it was liable in damages to the plaintiff for his injury, if such negligence was the proximate cause thereof?

The duty of the city in the premises was to use reasonable care to keep and maintain the bridge in good and sufficient repair to render it reasonably safe for all persons exercising ordinary care and prudence in passing on or over it. The question of fact as to whether the city has discharged that duty was submitted to the jury by plaintiff's instruction No. 1, above quoted. The fact that the defendant city allowed the hand-rail to remain off the bridge for a period of about three weeks before the accident, without any excuse being shown therefor, was suf-

ficient evidence to warrant the jury in finding the city guilty of negligent breach of its duty aforesaid. The verdict of the jury, therefore, concluded the question we have under consideration in the affirmative.

2. Was the negligence of the city aforesaid the proximate cause of the injury aforesaid?

From the statement of facts preceding this opinion it is manifest that this question must be answered in the affirmative, unless the plaintiff was guilty of contributory negligence, which would bar his recovery. This brings us to the consideration of the main controverted question in the case upon the facts, namely:

3. Was the plaintiff guilty of contributory negligence in not observing his nearness to the northern edge or side of the bridge and the absence of the hand-rail and in his walking off the bridge as he did?

The determination of this question depends, of course, upon the determination of the controverted question of fact as to what was the condition of light or darkness upon the bridge at the time of the accident. There being a conflict in the testimony on this subject, as shown in the above statement of facts, ordinarily the verdict of the jury would admittedly conclude the question. The city, however, invokes against such a conclusion the well established rule that "courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible;" and the following cases are cited on the point. *N. & W. Ry.* v. *Strickler,* 118 Va. 153, 155, 86 S. E. 824; *Mitchell* v. *So. Ry. Co.,* 113 Va. 643, 647, 88 S. E. 56; *Va. I. C. & C. Co.* v. *Kiser,* 105 Va. 695, 54 S. E. 889; *N. & W. Ry. Co.* v. *Crowe,* 110 Va. 798, 805, 67 S. E. 518; *Artz* v. *R. R. Co.,* 34 Ia. 154, 159; *So. Ry. Co.* v. *Wiley,* 112 Va. 183, 191, 70 S. E. 510; *C. & O.* v. *Anderson,* 93 Va. 650, 664, 25 S. E. 947; *Lake Erie, etc., Co.* v. *Stick,* 143 Ind. 449, 41 N. E. 365; *Hunter* v. *N. Y.,*

*etc., Co.* 116 N. Y. 615, 23 N. E. 9, 6 L. R. A. 246; *San Antonio Ry. Co.* v. *Choate* (Tex. Civ. App.), 35 S. W. 180; 4 Elliott on R. R. 2723; Moore on Facts, section 160. And it is contended that the physical fact being uncontradicted that a five-hundred candle power arc light was located at the intersection of Fifth and Garrett streets, which was variously estimated by the witnesses as from one hundred feet to two hundred and ten feet behind the plaintiff as he went upon the bridge, this court will judicially know that the testimony of the plaintiff was incredible wherein he said that it was so dark when he found he was on the bridge that he did not know that he was at the northern edge of the bridge; because the physical fact was that such a light at such a distance would so light the bridge that such a statement is in conflict with the physical facts. Such position ignores the effect of the clouds and the dampness of the night of the accident upon the spread of the beams of light from the arc-light toward and upon the bridge; the effect of the fact that such light was behind the plaintiff as he walked to and upon the bridge; the effect of the distance of the light away, which was left to be fixed by the jury from conflicting estimates of it; and the effect of the fact that the plaintiff as he came upon the bridge was faced with a light from within Allen's store which shone in his eyes and thus affected his vision—all of which were facts or circumstances for the consideration of the jury, and which they, having viewed the scene of the accident at the same hour of night and under conditions of cloudiness as nearly alike those which existed on the night of the accident as were found practicable, were in a better position than this court can be to weigh and consider. By their verdict the jury, in effect, found that the alleged conflict with physical facts aforesaid did not in fact exist. And the evidence, set forth in the statement of facts above is such that the jury were warranted in reaching such conclusion.

This is not a case where an admitted fact, or the testimony for a party to the cause, discloses a physical fact which is irreconcilable with some positions taken in another part or parts of such testimony.

We, as a court, therefore, cannot say that this is a case to which the rule invoked as aforesaid is applicable. On the contrary we are precluded by the verdict of the jury from so holding.

The question under consideration must, therefore, be answered in the negative.

The assignments of error based upon the action of the trial court with respect to the instructions raise the following points for our consideration.

4. It is urged by the city that plaintiff's instruction No. 1 required of it a higher degree of care than the law imposed, in that it used the word "all" as descriptive of the "reasonable care and precaution" which the instruction mentions. This is alleged to be a vice in verbiage very similar to the vice in instructions on contributory negligence consisting in the statement that if the plaintiff's negligence contributed to his injury "in the slightest degree," he was barred, which was condemned in the case of *Clinchfield Coal Corp.* v. *Osborne,* 114 Va. 13, 17, 55 S. E. 750.

We do not think that this point is well taken. The word "all" is not used in the first part of this instruction, which defines the duty of the defendant city. It is used only in connection with that portion of the instruction, which refers to the breach of duty of the city; and while it does emphasize the statement made in that connection, it adds nothing to the degree of care which the law imposed upon the defendant. The word "all" is itself qualified by the word "reasonable" which prevented the misleading of the jury into the idea that any trivial neglect of duty was what was meant by the instruction, for that would not

have been a failure to use "reasonable care and precaution," but a failure to use an *unreasonable* care and precaution.

5. The point is also urged against plaintiff's instruction No. 1, that in its use of the language "such a degree of care and caution as under the circumstances might reasonably be expected from a man of reasonable care and prudence," it allowed the jury to ignore the prior knowledge of the plaintiff of the situation and permitted the plaintiff to recover as if he were in the position of an ideal man exercising reasonable care and prudence, who is referred to in this instruction, although such ideal man may have had no prior knowledge of the situation.

We do not think that there is any merit in this position.

The words, "under the circumstances," employed in the instruction, confined the jury to the consideration of the instant case in which there was no dispute that the plaintiff had prior knowledge of the locality. Whether he had prior knowledge of the defect in the bridge—the absence of the hand-rail—which rendered the crossing of the bridge in the night time dangerous, was a question for the jury and was or was not one of the "circumstances" in the case as they might find to be the fact.

Moreover, when this instruction is read in connection with the other instructions given in the case, there is no room left for the construction of it which is placed upon it by the point under consideration.

6. It is urged that plaintiff's instruction No. 2 is erroneous because it imposes upon the city an absolute duty to provide all things necessary for the safety of travelers.

We do not consider this instruction free from all exception, and therefore do not give it our approval as a model instruction; but we do not think that it is open to the objection urged against it just stated—the only point urged against it in the assignments of error in the petition, and

hence, the only objection to it which is before us for consideration. With respect to such objection we have the following to say:

It is true that it is well settled that the duty of a municipality to provide safe streets is not absolute. Its duty in that behalf is to exercise "reasonable care" to make and keep its streets "reasonably safe for those exercising reasonable care for their own protection." *Cook* v. *Danville* 116 Va. 383, 385, 82 S. E. 90, L. R. A. 1915a, 1199; *Richmond* v. *Pemberton,* 108 Va. 220, 61 S. E. 787; *City of Richmond* v. *McCormack,* 120 Va., 552, 91 S. E. 767. But the instruction under consideration does not base the plaintiff's right of recovery upon the absolute duty of the city to make the bridge "safe." It does not, indeed, instruct the jury on the subject of the duty of the city in the premises. That function is performed by plaintiff's instruction No. 1, with which the instruction now under consideration must be read. When so read, we think there could have been no misconception of it by the jury on the point urged against it in the assignments of error.

7. It is urged that plaintiff's instruction No. 5 is erroneous because the scope of the jury's enquiry in ascertaining prospective damages is in no way defined.

We think that when read in connection with plaintiff's instruction No. 4 the instruction under consideration is not open to the objection urged against it, instruction No. 4 directed that if the jury should find for the plaintiff, "in estimating his damages they may take into consideration any bodily injuries which he may have sustained by reason of the accident complained of and any physical pain he may have suffered thereby." There was no evidence in the case, it is true, of loss of earning capacity of the plaintiff, but there was evidence of the permanence of his injury and his continued and prospective physical suffering therefrom. Reading the two instructions together we think

89

that the reasonable and obvious construction of instruction No. 5 is that it confined the scope of the jury's enquiry in ascertaining prospective damages to the assessment of damages for the permanent bodily injuries aforesaid (for his lack of "good active use of that foot," which the physician testifies was a permanent condition), and for any physical pain they might believe he would suffer in future by reason thereof. See *Winchester* v. *Carroll, supra,* 99 Va. 727, 40 S. E. 37, for an instruction (No. 12 in that case) similar to that under consideration.

8. The refusing to give defendant's instruction No. 3, and the giving of it as modified, is urged as error.

It is contended that this instruction as offered had the purpose to tell the jury that contributory negligence barred recovery. That the instruction as given eliminated that thought altogether and left the defendant with no *general* instruction on that point; "so that the jury were left with no guide whatever on such point, which was vital to the defendant."

This position overlooks the giving of defendant's instruction No. 5 as modified and No. 6. They were not *general* instructions, it is true, but specific instructions having reference to all the evidence in the case on which the defendant relied, or could rely, to show contributory negligence of the plaintiff. They, therefore, furnished the jury with a guide, and the proper guide, on the point of contributory negligence. Instruction No. 6 specifically told the jury that if they found certain facts that the plaintiff was "guilty of contributory negligence and cannot recover." Instruction No. 5, given as modified, was the same in substance. Hence, the giving of a general and abstract instruction on the subject of contributory negligence was unnecessary.

We, therefore, find no merit in the point under consideration.

9. What has been just said in reference to defendant's instruction No. 3, also applies to and disposes of the assignment of error because of the refusal of the court below to give defendant's general instruction No. 4, on the subject of contributory negligence.

10. The objections urged to the action of the trial court in refusing defendant's instruction No. 5 and giving it as modified, is to the insertion of the language "if he knew or ought to have known of this" (referring to the absence of the hand-rail), in the instruction as offered.

The language objected to manifestly had reference to a prior actual or imputed knowledge of the plaintiff of the absence of the hand-rail; an element of fact, which, if it existed, differentiated the case from that of a pedestrian who had no prior knowledge of the defect rendering the crossing of the bridge dangerous. *Winchester* v. *Carroll,* 99 Va. 727, 743, 40 S. E. 37; *Bedford City* v. *Sitwell,* 110 Va. 296, 65 S. E. 471. And this was, in truth, a question of fact raised by the evidence in the instant case. Such language was, therefore, properly inserted in the instruction.

11. What is said next above as to the giving of defendant's instruction No. 5, also applies to and disposes of the objection urged to the addition of the language, "if he knew or by the exercise of ordinary care ought to have known that it was dangerous," to defendant's instruction No. 7 as offered.

12. The refusal of defendant's instruction No. 8 is not specifically assigned as error in the petition. It is argued, however, in the petition that such refusal was error because the jury were left uninstructed upon the view that the reasonableness of the conduct of the plaintiff should have been determined in the light of the consideration of his old age and the rule of law that if by old age his activity had been impaired that fact imposed upon him the duty of

using greater precaution—citing *Winchester* v. *Carroll, supra,* 99 Va. 727, 734, 40 S. E. 37.

There was no evidence in the case tending to show that any want of activity on the part of the plaintiff contributed in the slightest degree to the accident.

Even if there had been such evidence it might have been error to have given such instruction, because it was upon the subject of the weight of evidence and singled out and emphasized one circumstance which should have been considered by the jury along with all the other circumstances in the case. That it embodied a correct abstract statement of the law did not make it a proper instruction to the jury.

And as to the old age of the plaintiff, the other instructions given by the court, notably No. 5 as modified, No. 6, No. 7 as modified, No. 9, No. 10 and No. 11, left no room for the jury to entertain the view that old age, or anything else, relieved the plaintiff of the duty to exercise ordinary care in passing along the street and over the bridge.

We do not consider, therefore, that there was any error in refusing the instruction under consideration.

13. The sole remaining assignment of error is the action of the court below in modifying defendant's instruction No. 11 as offered by adding thereto the language, "provided an ordinarily prudent person under similar circumstances would have remembered it."

The objections urged to this added provision is that it introduces a new element into negligence cases. That the *memory* of an ordinarily prudent man is a new attribute of that ideal person; and that what such a man might or might not ordinarily remember cannot be considered by a jury in admeasuring the conduct of a plaintiff by comparing it with that of an ordinarily prudent person under similar circumstances.

It is true, that it is well settled, that the general rule is, that inattention to or forgetfulness of a well known danger

or peril will not excuse a failure to avoid it. *City-of-Richmond*_v. *Courtney*, 73 Va. (32 Gratt.) 792; 20 R. C. L., p. 110, sec. 96. But where no question of the assumption of risk is involved, but only a question of contributory negligence (as in the instant case), on principle, inattention of failure of memory would not be contributory negligence, ·if under all the circumstances of the case it was legally excusable. And it is so excusable under certain circumstances, as is expressly held by the authorities—as where the plaintiff has his attention diverted by such a cause, or causes, as would ordinarily induce such forgetfulness or inattention in an ordinarily prudent or careful person in the same or in a similar situation. And there are other circumstances which may take a case of lapse of memory or lack of attention from under the operation of the general rule mentioned. 20 R. C. L., p. 110, sec. 96; 1 Labatt on Master & Servant, sec. 63, 281. After all, then, the enquiry concerning whether a failure of memory, or inattention, is such contributory negligence on the part of a plaintiff as will bar his recovery, is not different, in legal principle, or in practical application, from the enquiry as to whether any other act of the plaintiff constitutes such negligence, and it is to be measured by the same standard applicable to all other acts thus drawn in question, namely. by the standard of the action of the ideal man, which has been fixed upon by the law, to-wit, the action of the ordinarily prudent or careful person under the same or similar circumstances. The instruction under consideration asked the court, in effect, to instruct the jury that there could be no legal excuse for a failure of memory, or for inattention, to a once known fact. This would have been error. Moreover, in the instant case the plaintiff testified, in effect, that by reason of the dirt covered condition of the bridge and the darkness he was not aware that he was on the bridge until he had partly traversed it, and that in this situation,

the light shining in front of him from Allen's store windows thereupon misled him into the belief that he had reached the eastern end of the bridge and that the path where it left the bridge going up to Allen's store was in front of him and in the direction in which he then proceeded; and that because of that situation he really couldn't say that he was thinking about the hand-rail, and stepped, as he thought, on the path, when he in fact stepped off the side of the bridge. This was a situation in which it was a question of fact for the jury to determine whether the plaintiff was negligent in his inattention to or forgetfulness of the absence of the hand-rail, if they believed from the evidence that he had prior knowledge of its absence. We think, therefore, that there was no error in the modification of defendant's instruction No. 11, which is objected to.

For the foregoing reasons we find no error in the judgment complained of and the same will be affirmed.

*Affirmed.*