# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## PRESSLEY B. WHITE, ADMINISTRATOR, ETC. V. RICHMOND GREYHOUND LINES, INCORPORATED.

March 24, 1932.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Swink & Fentress, B. A. Banks, Kelsey & Jett* and *L. R. R. Curtis*, for the plaintiff in error.

*F. M. Chichester, Charles U. Williams* and *G. B. Wallace,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is a motion for judgment, growing out of an automobile accident. Plaintiff recovered a verdict of $10,000.00, which was set aside by the trial court. The propriety of that action is here challenged.

Plaintiff's decedent, John W. White, who lived in Washington, and who had lived in Norfolk, wished to return to his old home for the Christmas holidays, and on December 23, 1929, at eleven-thirty o'clock in the morning, left that city in a Hupmobile touring car for his vacation. With him as his guests went Mr. C. S. Boomer and Mrs. Boomer. All three of them sat in the front seat with Mr. Boomer at the wheel. The weather was bad. It had been snowing and raining, was misty and cold enough for ice to form upon the wind-shield, but not cold enough for it to form on the concrete roadway. To clear their wind-shield they stopped three times between Washington and the point of the accident. Their last stop was at Benton's Filling Station, forty-nine miles from Washington. There Mr. White undertook to drive. Mr. Boomer continued to sit by him, while Mrs. Boomer changed to the back seat. About a quarter of a mile south of this filling station, on the right of the road coming south, is a guard rail 140 or 150 feet long. On the left there is a guard rail also, shorter at its south end by twenty or thirty feet. White was between these fences when the defendant's bus appeared over the

top of a low hill about 200 feet away. Boomer said that it was traveling at the rate of forty-five or fifty miles an hour, and that their car, then in second gear, with one of its four cylinders dead, was going about twelve miles an hour, while just ahead of them on their side of the road seventy-five or 100 feet away was a snow plow. On cross-examination he changes this estimate of distance and puts it at 150 feet. This witness stressed the speed of the bus and said that "it was flying."

The accident occurred about two o'clock. With respect to the relative speed of these vehicles, it may be noted that the bus was on time and ran a schedule which called for between thirty and forty miles an hour. Plaintiff's decedent had been on the road two hours and a half. He had stopped at three stations on the way down and had gone over forty-nine miles, so that taking out the time lost at stops, his average speed had been about twenty-five miles an hour. As we shall hereafter see, his bus ran not more than sixty-three feet after it passed the snow plow. If Mr. Boomer is right in saying that the plow was 150 feet from him when he first saw it, and that the bus was then 200 feet away, it ran, from the time it came into view, about 113 feet, while the White car ran eighty-seven feet. The bus itself is thirty-one feet long, eight feet wide, and weighs 18,000 or 20,000 pounds, and has dual rear wheels. The roadway at the point of the accident is paved with concrete, has a width, of eighteen feet and down its center runs a white line four or five inches wide. On each side is an earthen shoulder, then not frozen, soft but not mushy, and on it was some snow.

This is Boomer's account, given in chief, of how the accident came about: "When he (the bus) came over the brow of the hill, the snow plow going south pulled off the concrete, the right hand rear wheel of the bus slipped off the concrete on to the shoulder of the road, and when the

right hand rear wheel slipped off, it throwed the front wheel over on my side of the road, he was heading right over on the other side of the road, all the way over. The only thing Mr. White said was 'he is going to hit us.' He was still over on our side of the road and when he found he was going to hit us, White turned the car to the other side of the road, trying to make for the woods, when the wheel of the bus came up on to the concrete again, he reined the bus up to go back to his side of the road, and that is where he picked us up."

Again he said that when the bus "pulled out to come by the snow plow his (its) right hand rear wheel slipped off, throwing the front of the bus over on our side of the road." From the rear of the bus when it stopped to the point where this rear wheel slipped from the concrete is sixty-three feet— that is to say, this thirty-one foot bus was thrown back into and across the road, righted itself, and came to a stop with both right wheels off the roadbed, within sixty-three feet of the point of departure. This is an exceedingly difficult manoeuvre for so large a vehicle, even if we concede that it is a possible one. At one time, according to the evidence of Mr. Boomer, the front half of the bus was over the white line and at an angle of about seventy-five degrees—that is to say, it lacked but fifteen degrees of being squarely across the road. Going at the speed testified to by this witness it would in all probability have turned over, and, in any event, would have left something in the nature of skid marks plain upon the wet pavement. There is no evidence of such marks.

Boomer, testifying further, said:

"Q. But you saw the hind wheel of this bus when it pulled around the snow plow, you saw the right hand wheel of the bus?

"A. I did. I noticed it when it dropped off, ahead of us.

"Q. It was ahead of you when it dropped off?

"A. Yes, when it dropped off the concrete, the road was like this, you know. When you see a big bus making his rate of speed you are going to notice what he is doing all the time.

"Q. How far was he over the white line.

"A. Pretty near over on the other side of the road. If he went a little further, the right hand rear wheels would have been on my side of the road before he took her up.

"Q. About how much further would you say he would have to go before he would slip off on your side of the road?

"A. About how much further? I could not say how far.

"Q. You say a little further?

"A. Half of the bus was over the white line. ·

"Q. At about what angle, put the position there.

"A. This is the white line, about half of the bus like this (indicating an angle of about seventy-five degrees) when it was heading on us.

"Q. Where was the right rear wheel when that happened?

"A. Came back on the concrete, that is why we cut off to go on his side of the road. We knew he was going to hit us when he slid over there.

"Q. When he got back on the concrete, how far had the right rear wheel gotten on the concrete?

"A. I could not see nothing then.

\* \* \* \* \* \* \* \* \* \* \*

"Q. Did the right rear wheel of the bus get back on the shoulder of the road, or not?

"A. It must have. He straightened her up in the road; started to make back to his side, because I know the bus went over on my side of the road, and if that bus driver will get up here and tell the truth he will say he slipped all the way over when he picked her up."

If testimony means anything, this witness has told us that the right hand rear wheel of the bus slipped from the concrete; that the bus turned to its left until this wheel

came back, and then to its right and proper side of the road where the collision occurred.

It may be noted in passing that plaintiff now contends that this witness, in speaking of the right hand rear wheel of the bus being almost on his side of the road, meant the wheel on his right hand, or the bus's left hand rear wheel. Mr. Boomer had spoken of this right hand rear wheel too often for us to believe that he inadvertently misdescribed it in this instance, and even if we assume that he did, he has placed this bus almost at right angles across the road, and so this right hand rear wheel either then came back upon the concrete or stood almost at right angles to it on soft ground, supporting in part a weight of 18,000 or 20,000 pounds.

The uncontradicted physical facts are that this right hand hind wheel of the bus slipped from the road sixty-three feet back from where it stood at the moment of collision, and that the track made by it in the soft shoulder of the road was perfectly straight and unbroken. "This track was in the snow just off to the right of the edge of the concrete, all the way down from twenty-one strides from where it went off back towards Falmouth going north, to where the bus stopped to the rear of the bus, just off of the concrete."

This uncontradicted statement of Mr. Butzner is based upon an examination made with the utmost care by him.

Mr. Harrison, joint agent for the Richmond Greyhound Lines and the R., F. & P. R. R., went with Mr. Butzner to the scene of the accident. He was asked if this bus wheel scraped against the edge of the concrete, and answered that it was entirely off. One of these gentlemen was a witness for the plaintiff and the other was for the defendant, and no attempt has been made to contradict or qualify their evidence.

Not only did the wheel not go back upon the concrete, but there is no evidence beyond Boomer's statement of any

attempt to put it back. If the bus had been turned at an angle of seventy-five degrees across the road, or indeed at any appreciable angle, the wheel would have scraped against the edge of the concrete and the soft earth of the shoulder would have been disked in such an attempt. It was not disked, and this wheel, after it slipped from the pavement, did not afterwards scrape against it. These physical facts make Boomer's statement incredible. He must be mistaken. It may well be that he was confused by the presence of sudden and deadly peril, but that cannot help the plaintiff's case. He must prove it, and in this instance there is no other proof but Boomer's testimony. If this wheel had come back upon the pavement, or had there been any attempt to put it back, such as has been described, unmistakable evidence of that movement would have been written upon the road.

■■ The plaintiff has failed to make out a case.

In such circumstances, evidence for the defendant need not be considered, and it would be idle to consider it in detail. As indicative of its general character, that given by Cadet Melvin, of the Virginia Military Institute, may be briefly adverted to. Mr. Melvin sat on the left hand side of the bus, in the second seat behind the driver, and when he first saw the automobile it was on the left hand side of the road. His estimate is that it was going between thirty-five and forty miles an hour, and that "it looked to me like it was skidding, came over on the right hand side of the road (that is, on our right hand side of the road) and bumped into the bus." He further said that the bus stayed on its side of the road, and that its left front wheel never at any time crossed the white line. There is other testimony to the same effect.

■ In this case we have to do with a verdict disapproved by the trial court. So stamped, it is, in the nature of things, of less authority than one approved by it, for the presiding

judge saw the witnesses and heard them testify. *Flannagan* v. *Northwestern Mutual L. Ins. Co.*, 152 Va. 38, 146 S. E. 353. Even when it has been sustained it must be supported by evidence.

"When a verdict has been returned and been confirmed by the trial court, it should be sustained if there is evidence to support it, unless such evidence is so wanting in verisimilitude as to be inherently improbable and to challenge credulity." *Boggs* v. *Commonwealth*, 153 Va. 828, 149 S. E. 445.

"It is said that all of these matters are for the jury, and that our court has frequently so held. All of this is true, but in all cases of this character there was something for the jury to decide, some issue made by the evidence. It is our duty to support a verdict when possible, while it, in turn, must be supported by the evidence. Any other rule would make of it a fetish and put away that responsibility which must always rest upon the court." *Norfolk & Western Ry. Co.* v. *Wellons' Adm'r*, 155 Va. 218, 154 S. E. 575, 579; *Bohlkin* v. *Portsmouth*, 146 Va. 340, 131 S. E. 790, 44 A. L. R. 810; *Meade* v. *Saunders*, 151 Va. 636, 144 S. E. 711.

This case does not come to us as on a demurrer to the evidence, but if it did even that unbending rule does not require us to believe the unbelievable. If we assume that it was possible for this bus to have moved as it is claimed that it did move, we are still confronted by this unescapable fact—it did not so move, and that it did not is demonstrated by uncontroverted physical facts.

Since the plaintiff has no case upon its merits, it is not necessary to discuss other assignments of error.

*Affirmed.*