# 𝔎𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## DONALD A. BURKE v. LEOTA C. SCOTT.

March 12, 1951.

Record No. 3732.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Harrison, Benham & Thoma,* for the plaintiff in error.

*J. Sloan Kuykendall, Henry H. Whiting* and *Edward McC. Williams,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Mrs. Scott, plaintiff below, brought this action against Burke, defendant, for personal injuries sustained in a collision between

the cars they were driving. Burke filed a counter claim for damages to his car. A trial by jury resulted in a verdict for plaintiff, on which judgment was entered and Burke appeals.

The assignments of error charge that the verdict was contrary to the evidence and that the court erred in giving and refusing instructions.

The accident happened at a point west of Boyce, in Clarke county, where old U. S. Highway No. 50, which runs east and west, is entered from the north, but not crossed, by a private driveway from the residence of Henry Johns. The driveway meets the highway so that the intersection of their center lines would make a 70° angle on the west side. A plat of survey and some photographs of the scene were introduced in evidence. At the place of accident Route 50 is a two-lane highway with a hard surface 18 feet wide. The traveled portion of the driveway is 9.5 feet wide, with grass shoulders three or four feet wide extending out on each side to a board fence. Trees, vines and weeds along the fences, as well as trees and weeds or brush along the north side of the highway, affected the vision from both roads. The driveway broadened out at its junction with the highway and was about 45 feet wide where it joined the north side of the hard surface. The driveway was of dirt and gravel at that point.

On October 17, 1947, at about 5:40 a. m., Mrs. Scott was driving her Ford car from Boyce west toward Winchester, where she had worked for about 25 years. Her sister, Mrs. Tinsman, was on the front seat to her right and a Mrs. Spindle was on the back seat. Mrs. Scott was very familiar with the road, having driven over it continuously for about five years. It was still dark, the morning was very foggy and her car lights were on. They were traveling at about 20 miles an hour.

As the Scott car approached, the defendant Burke was driving his car south along the driveway, expecting to turn to his left on Route 50 toward Boyce. In his car on the front seat was Henry Johns and on the back seat was a Mr. Morley. The lights of the Burke car were on. The six persons named were the only eye-witnesses. Mrs. Scott and her two companions testified that the collision occurred on the highway in front of the entrance to the driveway. Burke and his two companions testified it happened in the driveway.

The Scott version of the accident was this: As they drove

along in the darkness and fog the Scott car was on its right-hand side of the road and both Mrs. Scott and her sister were looking ahead to see if any car was on the road. They saw none, nor any lights, but suddenly the Burke car drove out of the driveway and upon the highway directly in front of them. The Scott car was then only about 25 feet away. Mrs. Scott applied her brakes but had no chance to stop and the collision occurred immediately. The left front of the Scott car struck the left side of the Burke car about the hinges of its left front door, five or six feet back from the front. The occupant of the Scott car were injured and Mrs. Scott rendered unconscious for a time. She was taken out of her car and placed on a seat cushion in the driveway. Dr. Dearmont, who died before the trial, arrived a few minutes later and took the three occupants of the Scott car to a hospital, leaving only the occupants of the Burke car at the scene. Righ after the accident, when Mrs. Tinsman called to the men in the Burke car to help take Mrs. Scott out of her car, they were moving the Burke car out of the highway back into the driveway. The Scott car was still sitting on the hard surface of the highway when the doctor's car left.

The occupants of the Burke car testified that the accident happened this way: When they were within about 20 feet of the north side of the hard surface of the highway they noticed head-lights coming from their left 100 to 125 feet away. They stopped their car about the middle of the driveway, turned slightly to the east, four to five feet from the edge of the pavement, and waited for the car to pass. It did not pass, but kept coming farther to its right until it struck the Burke car sitting in the driveway. The Scott car left the hard surface of the highway about 35 feet east of a mailbox, which stood on a post five feet four inches north of the hard surface of the highway and about 30 feet east of the center of the driveway. It passed within a foot of the mailbox, continued more to the right and swerved quickly farther to the right just before striking the Burke car. The Scott car stopped pretty close to where it struck (Morley testified it bounded back about a foot and a half from where it hit) and no part of it was on the surface of the highway. The Burke car was knocked back six feet northwestwardly across the driveway into and partially through the board fence on the west side of the driveway and faced about perpendicular to the high-way. Neither of the cars was moved after the accident. Later

Burke drove his car away in low gear, the only one he could use.

It is thus apparent that the two versions are diametrically opposed and both cannot be true. The general rule is that on conflicting evidence the verdict of the jury is conclusive. This the defendant does not deny but he claims that the undisputed physical facts demonstrate that the plaintiff's evidence is incredible. These physical facts are said to be: (1) A tire mark 35 feet long extending along the north shoulder of the highway and terminating in the driveway at the right rear wheel of the Scott car; (2) a scuff mark in the center of the driveway four feet north of the hard surface extending six feet northwestwardly to the left front wheel of the Burke car; (3) debris in the driveway and none on the highway. It is necessary to ascertain whether these are undisputed physical facts which render the evidence for the plaintiff incredible.

When a State trooper arrived on the scene after the occupants of the Scott car had been taken away by the doctor, and some 50 minutes after the accident, he found the defendant and his two companions there and they told him how the accident happened. He did not remember whether they pointed out any marks to him, but he saw a tire mark on the right shoulder of the road starting approximately seven feet east of the mailbox and continuing to the right rear wheel of the Scott car, which was then standing with its left rear wheel five feet six inches from the center of the highway (which would put it on the pavement three feet six inches from the north edge), and with its left front wheel in the driveway two feet from the edge of the pavement. He did not say this mark stopped at the rear of the Scott car but said he did not measure where it went, nor did he measure from its west end to the hard surface. He said it went right up against the mailbox which, as stated, was five feet four inches north of the pavement. Burke and his companions testified that this mark began some 35 feet beyond the mailbox. Burke said it stopped in the lane. Johns said it "followed right straight up to Mr. Burke's (*sic*) car, the left hind wheel." A juror asked him if he meant the left and he said the right hind wheel. Morley merely said it came down to the Scott car, but he was uncertain whether there were one or two marks at the mailbox. Morley also said there was a mark where the left front wheel came off the pavement, but nobody testified there was a corresponding mark in the driveway.

These observations were made after Dr. Dearmont's car had come and gone. The evidence does not show how he drove in and out of the driveway. Johns said he edged his car between the other two cars. Morley said Dearmont parked his car on the left side of the Scott car, with one rear wheel on the hard surface, but did not drive between the Scott car and the Burke car. Burke said Dearmont parked so the rear end of his car was about three feet in front of the front end of the Scott car and facing Winchester, but did not drive between his car and the Scott car. Morley also testified that they looked for this tire mark before the trooper got there. The other two testified they did not look for any marks until after the trooper came.

Added to these discrepancies in the defendant's evidence was the positive testimony of two of plaintiff's witnesses that the Burke car and the Scott car were both on the highway immediately after the collision and that the Burke car was backed off the road and into the fence before Mrs. Scott was taken out of her car. Mrs. Spindle also testified that she saw the tire tracks of the Scott car on the right-hand side of the hard surface starting at a point where Mrs. Scott applied her brakes about 25 feet from the point of collision.

In addition, a Greyhound bus came along within ten minutes after the accident. The driver saw what he thought was the Scott car sitting at an angle with its left front wheel on the hard surface but he could not tell where the rear of the car was. He was practically on it before he saw its lights and did not stop but turned out to pass it. A passenger in the bus testified he recognized the Scott car; that it was sitting at an angle with its front about on the white line and its right rear wheel back to the shoulder of the road.

The jury may have questioned whether the Scott car made the tire track if it passed almost against the mailbox five feet to the north of the pavement, continued to veer to its right until it struck the Burke car and still would have its left rear wheel three feet six inches on the hard surface after the collision, as the trooper found it.

With reference to the scuff mark, relied on as the second physical fact, the trooper testified that there were skid marks, where tires had pushed away loose gravel, beginning four feet from the edge of the pavement and extending six feet back to the front bumper of the Burke car. Burke and his companions testified to seeing the same marks. If the Burke car, damaged

so its gears could not be changed, was backed into the fence after the collision, as plaintiff's witnesses testified, these marks could have been made by that movement. Burke testified that when he was struck his car was about the middle of the driveway, turned slightly east. If it was shoved from that position half way through the fence at the point indicated on the map, its rear end would have moved some 15 feet, but nobody testified to any marks made by the rear tires. This contention so impressed one of the jurors that he inquired of defendant's witness Johns. "Do you mean to tell me the car coming down here actually knocked it over there? * * * And still set (*sic*) on four wheels * * * and you all in it? What would you figure the distance, 20 feet?"

Again, the tropper testified that when he arrived at the scene the rear of the Scott car was 28 feet west of the mailbox, which would be a little to the west of the center of the driveway. If the Burke car was standing still astride the center line of the driveway when it was struck by the left front of the Scott car, and the Scott car stopped practically where it struck, as the defendant's testimony had it, it is difficult to see how it could have pushed the Burke car to the northwest, caused these scuff marks to be made by the front wheels of the Burke car, and still be in the position the trooper testified it was in when he found it. In that position its front was farther west than the beginning point of the scuff marks. The trooper could not say whether the two cars were still jammed together when he measured the scuff marks. His lack of memory on that point might well have affected the jury's opinion of the accuracy of his observations.

The evidence as to the debris on the driveway came only from Burke and the trooper. Burke testified there was nothing on the highway but there were broken glass and sludge that clings to automobiles about the center of the driveway and four feet from the pavement. The trooper said what he found at that place "were parts of the automobile, such as dirt and a part of the grille off of the Ford and just general small parts." It is not a necessary conclusion that what was found there established the point of collision. If the cars were moved after the collision, as the jury could have believed, this debris could have resulted from that movement. What there was about the dirt to distinguish it from the dirt and gravel of the driveway was not explained. What area the debris covered is not stated. It was

said to be four feet from the pavement. That is the point where Burke and his companions said they stopped their car; but the point of impact, where ordinarily debris from the collision would be found, was at least five feet farther back, according to their testimony.

In the light of these and other details of the evidence appearing in the record, the physical facts relied on are not such as render incredible the testimony for the plaintiff. To be incredible, evidence must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.

If the existence of the object or thing, or what caused it to exist, is involved in substantial conflict, and hence depends upon the accuracy or credibility of those who testify, then the object or thing is not a physical fact that furnishes an unyielding test of oral evidence. A tire mark in a road is a physical fact. If it be admitted or proved that it was made by the plaintiff's car, and if that could not be true unless the plaintiff's account of the accident be untrue, then the plaintiff's evidence is incredible and a verdict founded on it cannot stand. But if the evidence is conflicting as to whether the mark was made by the plaintiff's car, and reasonable men could differ about it, the issue is for the jury and their verdict cannot be disturbed. *Mauser* v. *Hebb,* 187 Va. 876, 48 S. E. (2d) 257; *Charlottesville* v. *Jones,* 123 Va. 682, 701, 97 S. E. 316; *Kirby* v. *Moehlman,* 182 Va. 876, 883, 30 S. E. (2d) 548, 550; *Scales* v. *Majestic Steam Laundry,* 114 W. Va. 355, 171 S. E. 899; *Clark* v. *Berry Seed Co.,* 225 Iowa 262, 280 N. W. 505, 508; *Clark* v. *Philadelphia Transp. Co.,* 156 Pa. Super. 623, 41 A. (2d) 282; *Izor* v. *Brigham,* 111 Vt. 438, 17 A. (2d) 236, 237; *Barrows* v. *Powell,* 113 Vt. 109, 29 A. (2d) 708, 711; *Duss* v. *Friess,* 225 Wis. 406, 273 N. W. 547, 550; 20 Am. Jur., Evidence, § 1183, p. 1033; Annotation, Annotated Cases 1917B at p. 475; Moore on Facts, Vol. 1, § 150, p. 195.

The facts distinguish this case from *Noland* v. *Fowler,* 179 Va. 19, 18 S. E. (2d) 251, and *White* v. *Richmond Greyhound Lines,* 158 Va. 462, 163 S. E. 78, relied on by defendant. In both of those cases the physical facts which were held to require rejection of plaintiff's evidence were uncontroverted.

Here the jury, after seeing and hearing the witnesses and viewing the scene of the collision, decided that the plaintiff's version of the accident was the true one and their decision was

approved by the trial judge. The conflicts were for the jury to settle and we are not at liberty to disturb their finding.

The assignments of error relating to instructions are not substantial. The court refused defendant's Instruction G, on the subject of weighing the evidence, telling the jury to consider accuracy of recollection, reasonableness and consistency of each part of the witness' evidence, and his interest. In its place the court gave plaintiff's Instruction No. 1, telling the jury they were the sole judges of the weight of the evidence, and to consider the witness' appearance, manner, fairness, intelligence and interest; and that they were not bound to determine the facts to be on the side of the greater number. We think this ruling did the defendant no harm. The instruction that was given more nearly accords with the usual form. Such an instruction is not often vital, as it deals with the reasoning process, which the juror will ordinarily exercise according to his own notion.

The court also refused three instructions requested by the defendant to the effect that if the plaintiff was guilty of contributory or concurring negligence she could not recover. The two on contributory negligence would have told the jury that if the plaintiff was negligent in failing to observe the defendant's automobile or in keeping her own car under proper control, and that was the sole proximate cause of the damage, they must find for the defendant. The court took the view that on the evidence contributory negligence was not an issue, and that if the accident occurred on the highway the plaintiff should prevail and if on the driveway the defendant should prevail. The jury were accordingly instructed that if Burke drove his automobile onto the highway in the face of the approaching Scott car, he was guilty of negligence and if that was the sole proximate cause of the collision the plaintiff should recover; but if the plaintiff negligently permitted her car to leave the hard surface and enter the driveway, and that was the sole proximate cause of the collision, the defendant should recover.

While these instructions in effect submitted the issue of contributory negligence, we hold with the view expressed by the trial court that it was not an issue under the evidence. If the accident happened as the plaintiff claimed, it was entirely the defendant's fault. If it happened as the defendant claimed, it was entirely the plaintiff's fault. If the plaintiff drove into the driveway, that was negligence, barring her claim and entitling the defendant to recover on his cross-claim; and it mattered not

whether her doing so was due to failure to observe or failure to keep her car under control, or both. If she did not drive into the driveway, the only cause of the accident was the defendant's driving out onto the highway, and there is no evidence that any negligence of the plaintiff contributed to the resulting collision. The only evidence on the subject of keeping a lookout is that she was looking, and on the subject of proper control is that she was exercising it. The burden was on the defendant to show otherwise, which he made no attempt to do other than to show that she drove into the driveway, and in that event the jury were told the plaintiff could not recover but the defendant could. A conclusion that plaintiff's negligence contributed to the collision on the highway would be mere speculation and without basis in the evidence.

The judgment below is

*Affirmed.*