COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


BYRON DARNELL WINCKLER, S/K/A
 BYRON WINKLER
                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0691-06-2              JUDGE JEAN HARRISON CLEMENTS
                                                      MARCH 6, 2007
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                          Daniel T. Balfour, Judge

            (R. Christopher Jones, on brief), for appellant.  Appellant
            submitting on brief.

            Rosemary V. Bourne, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Byron Darnell Winckler (appellant) was convicted in a bench trial of two counts of

robbery, in violation of Code § 18.2-58, and two counts of using a firearm in the commission of

a felony, in violation of Code § 18.2-53.1.  On appeal, he contends the trial court erred in finding

the evidence sufficient to support his convictions.  We disagree and affirm appellant's

convictions.

        As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

"When the sufficiency of the evidence is challenged on appeal, we review the evidence 'in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Emerson v. Commonwealth, 43 Va. App. 263, 276, 597 S.E.2d 242, 249 (2004) (quoting Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987)). "'In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'"  Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (quoting Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988)).

So viewed, the evidence presented in this case established that, on the afternoon of April 16, 2005, appellant and his fiancée, Nicole White, were visiting White's mother in a Richmond area hospital when they encountered Calvin Cawthorne, White's mother's boyfriend, and Arnold Clark, an acquaintance.  Like appellant and White, Cawthorne and Clark had traveled from Tappahannock to visit White's mother.  Appellant and White believed Cawthorne had caused the head injury for which White's mother was hospitalized.

Later that afternoon on the way back to Tappahannock, Cawthorne and Clark saw appellant and White driving on Route 360 in Henrico County.  As appellant and White approached Clark's truck from the rear, appellant, who owed Cawthorne $40, waved some money out the sunroof of White's car and motioned for Clark to pull over into an empty parking lot.  Believing appellant intended to repay the $40 he owed him, Cawthorne told Clark to turn into the parking lot.

After White pulled her car in front of Clark's truck in the parking lot, Cawthorne and appellant got out of their vehicles.  Appellant approached Cawthorne at the rear of the truck and

- 2 -

accused him of inflicting the injury sustained by White's mother. Cawthorne denied hurting White's mother. Clark, who lived next door to White's mother, exited the truck and told appellant that Cawthorne had not hurt White's mother. Appellant responded, "Don't worry about it, we'll handle it."

At that point, an unidentified male walked across the street and approached the three men in the parking lot. When the unidentified man opened his jacket and produced a pistol, appellant said, "We're robbing you," and told Cawthorne and Clark to empty their pockets. The armed man pointed the gun at Cawthorne's leg and Cawthorne gave him the contents of his front pockets, including $17 in cash. Not believing appellant was going to rob him, Clark returned to the truck. Appellant directed the armed man to point the gun at Clark, and Clark handed his wallet to appellant. Appellant took $30 from Clark's wallet and threw the wallet back at Clark. Appellant and the armed man then threw Clark's keys and the discarded items from Cawthorne's pockets into the grass at the back of the parking lot.

After the robbery, the armed man crossed back to the other side of the street and disappeared, and appellant got into White's car. Cawthorne heard appellant telling White what he had gotten in the robbery. As White drove away, Cawthorne and Clark both saw appellant counting the money he had taken. Cawthorne then attempted to find the keys and other discarded items in the grass. Clark, who was "scared to death" told Cawthorne he had a spare set of keys and wanted to get out of there immediately. When Cawthorne got in the truck, they locked the doors and drove back to Tappahannock. Both men were "upset [and] shook up."

The next morning, Cawthorne and Clark returned to the parking lot to look for Clark's keys and the other items thrown in the grass. After retrieving the discarded items, they reported the incident to the police. They met first with uniformed police officers and then with Investigator Jim Mitchell. Although Clark informed Investigator Mitchell about the items he and

- 3 -

Cawthorne had recovered from the grass, Investigator Mitchell did not obtain those items from the men.

Following appellant's arrest, Investigator Mitchell interviewed him at the jail. Appellant admitted flagging Cawthorne down on Route 360 and talking to him in the parking lot. He insisted, however, that he and White left the scene when the unidentified man crossed the street and approached the group in the parking lot. The man's approach, he told Investigator Mitchell, "made him uncomfortable."

At appellant's trial, the Commonwealth's evidence, which consisted of testimony by Cawthorne, Clark, and Investigator Mitchell, established the facts recounted above. Cawthorne admitted at trial that he had been convicted of breaking and entering and conspiracy to distribute drugs, and Clark admitted he had been convicted of robbery, burglary, and murder.

Testifying for the defense, White admitted that appellant flagged Cawthorne and Clark down but denied he robbed them. She testified that she and appellant left the scene shortly after the unknown man approached from across the parking lot.

During closing argument, appellant's counsel argued that, based on their criminal records and the inconsistencies in their testimony about the incident, Cawthorne and Clark were not credible witnesses. Finding that Cawthorne's testimony was "fairly consistent" with Clark's, the trial court accepted the Commonwealth's evidence and convicted appellant on all four of the charges against him.

This appeal followed.

## II. ANALYSIS

On appeal, appellant contends solely that the Commonwealth's evidence was insufficient to support his convictions because the testimony offered by Cawthorne and Clark was inherently incredible. We disagree.

In accord with well-established principles, we will not reverse the judgment of the trial court unless it is plainly wrong or without evidence to support it. We also accept the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."

Nobrega v. Commonwealth, 271 Va. 508, 518, 628 S.E.2d 922, 927 (2006) (citation omitted) (quoting Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999)). For testimony to be inherently incredible, as a matter of law, "it 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968) (quoting Burke v. Scott, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951)). In other words, it must be "so contrary to human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 300, 321 S.E.2d 202, 204 (1984).

Here, as appellant correctly points out, the Commonwealth presented no physical evidence implicating him in the charged crimes. Instead, the Commonwealth relied almost exclusively on the testimony of Cawthorne and Clark to establish appellant's guilt. The trial judge, who had the opportunity to observe Cawthorne and Clark as witnesses, credited their testimony. Thus, we are bound by the court's credibility determination unless the testimony of Cawthorne and Clark was inherently incredible, as a matter of law. See Nobrega, 271 Va. at 518, 628 S.E.2d at 927.

Appellant claims the testimony of Cawthorne and Clark was inherently incredible, as a matter of law, because their "stories were wholly inconsistent." They "could not agree," appellant asserts, "on the most basic facts surrounding the alleged robbery, such as whether it occurred during broad daylight, as Cawthorne suggested, or, according to Clark, in the dark of night."

The record, however, does not support appellant's portrayal of Cawthorne's and Clark's testimony. For example, when asked at trial when he first saw appellant on Route 360, Cawthorne responded, "Toward that evening." When asked if it was "dark out," he explained that it was not dark yet, but rather "the evening hours sometime prior to sunset." And, in describing the lighting when the armed man approached them in the parking lot, Clark stated that "it was getting dark." When asked if "it was dark outside" at the time, he replied: "Was getting dark. It may have been totally dark. I don't remember that well." Notwithstanding appellant's claim to the contrary, such testimony is not so inconsistent that it renders Cawthorne's and Clark's testimony unbelievable. Indeed, the trial court as fact finder could reasonably infer from Cawthorne's description of the lighting when the groups first encountered each other on Route 360 and Clark's description of the lighting when the armed man subsequently approached them in the parking lot that the robbery took place sometime during the evening, after "broad daylight" and before "the dark of night."

Moreover, both Cawthorne and Clark described appellant as having played an active role in the robbery. Both testified that appellant flagged them down on Route 360 under the pretext of paying Cawthorne the money he owed him. They both also testified that, after the unidentified man approached them in the parking lot brandishing a firearm, appellant made statements indicating that he and the armed man were robbing them. In addition, both victims testified that appellant took the money from Clark's wallet and that they both saw him counting the money he had stolen as he and White drove off.

It is clear, therefore, that Cawthorne's and Clark's accounts of the incident were consistent with regard to appellant's commission of the charged crimes. To the extent the victims' testimony contained minor inconsistencies, it was up to the trial court as the finder of

fact to account for those discrepancies in weighing their credibility.  Nothing in the record renders their testimony inherently incredible, as a matter of law.

Appellant further argues that the victims' delay in reporting the robbery to police, their status as convicted felons, their inability to give a more detailed description of the unidentified armed man, and their retrieval of their discarded belongings before reporting the robbery to police render their testimony inherently incredible.  However, "[t]he mere fact that a witness may have delayed in reporting knowledge of a case . . . does not necessarily render the testimony unworthy of belief."  Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006).  Nor is testimony from a convicted felon inherently incredible.  Yates v. Commonwealth, 4 Va. App. 140, 144, 355 S.E.2d 14, 16 (1987).  Likewise, we cannot say that a robbery victim's recovery of his car keys and other discarded stolen items before reporting the robbery to police is an act so contrary to human experience as to render the victim's entire testimony regarding the robbery unworthy of belief, particularly where, as here, the discarded items are exposed to the weather and subject to being taken by anyone who happens by.  Finally, we are aware of no authority for the proposition that a victim's failure to describe the accused's cohort to the accused's satisfaction renders the victim's testimony inherently incredible, as a matter of law.  These circumstances are "appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact finder] to determine."  Juniper, 271 Va. at 415, 626 S.E.2d at 417.

Having determined that the testimony offered by Cawthorne and Clark was not inherently incredible, as a matter of law, we hold the trial court did not err in finding the evidence sufficient to support appellant's convictions.

### III.  CONCLUSION

For these reasons, we affirm the trial court's judgment and appellant's convictions.

Affirmed.