COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Huff, Judge Decker and Senior Judge Clements
Argued at Richmond, Virginia


LOUIS CHESTER LEE, JR.

                            MEMORANDUM OPINION[*] BY
v.      Record No. 1896-14-2        JUDGE MARLA GRAFF DECKER
                                JULY 28, 2015
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Patrick R. Bynum, Jr., for appellant.

Susan Baumgartner, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Louis Chester Lee, Jr. appeals his conviction for violating a protective order, as prohibited

by Code § 16.1-253.2. Specifically, he contends that the evidence was insufficient to support his

conviction because the Commonwealth failed to present any credible evidence that he violated the

terms of the protective order. For the reasons that follow, we affirm the judgment of the trial court.

I. BACKGROUND[1]

On July 1, 2013, the Henrico County Juvenile and Domestic Relations District Court

granted Maritta Ellis a two-year protective order against the appellant. The order requires the

appellant to have no contact with Ellis and remain at least 1,000 feet away from her at all times.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On appeal of the sufficiency of the evidence to support a criminal conviction, the Court views the evidence and all reasonable inferences flowing from the evidence in the light most favorable to the Commonwealth. See, e.g., Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

The order specifically states, "No exceptions.  No phone calls, letters, emails, text messages, instant messages, [or] social networking messages."  The appellant and Ellis have a child in common.   The order requires that the appellant communicate with Ellis through a third party regarding any "visitation issues or any other issue pertaining to their child in common."

"On or about" October 20, 2013, pursuant to a visitation order concerning the transfer of their child, the appellant delivered the child to Ellis at a shopping center in the Town of Ashland.[2]  Ellis waited for her child in front of the Martin's supermarket in the shopping center. She saw a vehicle she associated with the appellant or his family in the lot of the shopping center within 1,000 feet of where she was waiting in her own vehicle.  The child, who was escorted by another child, came over to Ellis in the parking lot.

After she picked up her child, Ellis proceeded to drive away.  She stopped at a stoplight located at the exit of the parking lot.  The appellant's vehicle was in front of her at the stoplight. While both parties were waiting for the light to change to green, Ellis saw the appellant appear "to be exaggerating laughter."  He "raised his hand and gestured to her in a threatening manner." He also "made a gesture to her which she interpreted as [the appellant] making the sign of a pistol with his hand and exhibiting a gesture in which he pulled the trigger of the imaginary pistol . . . ."  After the encounter, both parties exited the parking lot and left the area.

On cross-examination, Ellis said that she was unsure of the specific date of the incident. She also could not describe exactly how far away the appellant was from her during the transfer of the child.  The only time she saw him was when both parties were leaving the parking lot.

---

[2] In lieu of a transcript of the trial court proceedings, a written statement of facts was filed on September 12, 2014.

The trial judge took judicial notice of the fact that, due to the size of the shopping center, anywhere that the appellant was within the parking lot was also within 1,000 feet of Ellis' location in front of the Martin's supermarket.

The appellant testified in his defense. He denied making any threatening gestures to Ellis. He also said that he was never within 1,000 feet of her. He testified that he was certain he did not have visitation with the child on October 20, 2013. The appellant acknowledged, however, that he had visitation every other weekend and would return the child to this particular shopping center's parking lot on Sundays. He did not remember whether he had dropped off the child at the parking lot on any other Sunday that October.

The appellant also testified that Ellis had brought two other charges of a violation of the protective order. The one in Caroline County had been dismissed, and the one in Henrico County was continued to a date after the instant case.

The trial court found the appellant guilty of a violation of a protective order and sentenced him to thirty days in jail, with twenty-eight days suspended.

## II. ANALYSIS

### A. *Written Statement of Facts*

As a preliminary matter, we resolve the issue of whether the written statement of facts is properly part of the record on appeal. In the order granting the petition for appeal, in addition to granting the assignment of error, this Court requested briefing on the following question:

> Whether the statement of facts in lieu of a transcript is properly a part of the record on appeal in this case where the statement of facts has been timely filed in the circuit court and has been signed by both parties' attorneys – but does not include the signature of the circuit judge, and instead simply bears a stamp with the circuit court's judge's initials indicating that the judge has "seen" the statement of facts on the same day it was filed.

In this case, instead of a transcript, a written statement of facts was prepared by counsel for the appellant. The statement of facts was then signed as "seen and agreed" by counsel for the appellant and the Assistant Commonwealth's Attorney. It was stamped "received and/or filed" in the Hanover Circuit Court clerk's office on September 12, 2014. On that same date, it was also stamped "Seen Sep 12 2014 J.O.H., Judge."

Rule 5A:8(c) provides that:

> A written statement of facts, testimony, and other incidents of the case becomes a part of the record when:
>
> (1) within 55 days after entry of judgment a copy of such statement is filed in the office of the clerk of the trial court. A copy must be mailed or delivered to opposing counsel on the same day that it is filed in the office of the clerk of the trial court, accompanied by notice that such statement will be presented to the trial judge no earlier than 15 days nor later than 20 days after such filing; and
>
> (2) the statement is signed by the trial judge and filed in the office of the clerk of the trial court. The judge may sign the statement forthwith upon its presentation to him if it is signed by counsel for all parties, but if objection is made to the accuracy or completeness of the statement, it shall be signed in accordance with paragraph (d) of this Rule.

Here, the appellant filed an agreed-upon statement of facts within fifty-five days of the entry of judgment. In accordance with the rule, "[t]hereafter, the trial judge must sign the statement, correct the statement and sign the corrected statement, or, in cases where the judge cannot in good faith recall or accurately reconstruct the relevant proceedings, order a new trial." Proctor v. Town of Colonial Beach, 15 Va. App. 608, 610-11, 425 S.E.2d 818, 820 (1993) (*en banc*). The issue in this case is whether the statement of facts is a part of the record on appeal, where it does not include the signature of the trial judge, and instead simply bears a stamp with the judge's initials, indicating that the judge has "seen" the statement of facts on the same day it

was filed.  Based upon the totality of the circumstances, we conclude that the stamped initials are sufficient as a signature under Rule 5A:8(c).

In the case of an agreed-upon statement of facts, initials of the trial court are sufficient to comply with the Rules.  Support for this conclusion comes from a variety of legal sources. Virginia law allows for initials to constitute a signature in the context of estate law.  Code § 64.2-403 provides that a valid holographic will must be "signed by the testator"; however, the statute does not include a definition of what constitutes a signature.  The Supreme Court of Virginia, in Pilcher v. Pilcher, 117 Va. 356, 366-67, 84 S.E. 667, 670-71 (1915), held that the testator's initials, rather than his full name, were sufficient to meet the statutory requirements of a signature.  Additionally, several legal definitions of "signature" permit initials to constitute a valid signature.  The Uniform Commercial Code defines signature as "any name, mark, or writing used with the intention of authenticating a document."  U.C.C. § 1-201.  The Restatement (Second) of Contracts § 134 contains the statement "[t]he signature to a memorandum may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer."  Black's Law Dictionary 1593 (10th ed. 2014) defines signature as "[a] person's name or mark written by that person or at the person's direction."  In this case, the agreed-upon statement of facts has a stamped mark with the word "Seen," the trial judge's initials, "J.O.H.," and his title, "Judge."[3]  The stamped initials signify a mark of the judge, made with the intention of authenticating the statement of facts, and therefore constitute a signature for purposes of Rule 5A:8.

---

[3] The stamped mark on the written statement of facts reflects that the document was "Seen" by the trial judge, but does not specify that it was reviewed or approved.  However, Rule 5A:8(c) only requires that the trial judge "sign" the agreed-upon statement of facts, which the judge may do "forthwith upon its presentation to him."  Rule 5A:8(c)(2).  Therefore, despite the fact that the stamp only demonstrates that the document was "[s]een" by the judge, this does not render the judge's marking invalid under the rule.

Additionally, the procedure for a judge to approve a written statement of facts under Rule 5A:8 supports the conclusion that the judge's stamped initials suffice as a signature. Rule 5A:8(c) specifically states that the trial judge "may" sign the statement upon presentation to the court. "Implicit in the use of the permissive 'may' is the recognition that the judge is not required to sign a statement that he or she believes is not accurate." Proctor, 15 Va. App. at 610 n.2, 425 S.E.2d at 819 n.2. "In such situations, the judge may modify the statement and sign the modified statement, or, if the judge is unable accurately to recall the pertinent proceedings, order a new trial." Id. It is clear that the judge had the option to refuse to sign the statement if he believed it to be inaccurate. Here, the agreed-upon written statement of facts which was properly filed is stamped with the trial judge's initials, indicating his approval of the document as presented to him.

Finally, the overall purpose of the requirement that the trial judge sign the document is to "ensure an accurate and complete statement of the facts and procedural history of the proceeding in the trial court." Id. at 610, 425 S.E.2d at 819. That purpose is satisfied here because the judge's stamp serves as an indication that the written statement of facts has been reviewed by the court and is accurate and complete. This conclusion is supported by the presumption of regularity that attaches to the judge's action in accepting the statement of facts and stamping it. See Gilmore v. Landsidle, 252 Va. 388, 396, 478 S.E.2d 307, 312 (1996) ("In the absence of clear evidence to the contrary, this Court must presume that a public officer has properly discharged his official duties."). Here, as both parties to this proceeding suggest, the judge's stamped initials constitute his signature for purposes of Rule 5A:8 and therefore the written statement of facts is properly part of the record on appeal.[4]

---

[4] The Attorney General and the appellant argued on brief that the statement of facts is properly part of the record on appeal.

*B. Sufficiency of the Evidence*

The appellant argues that the evidence was insufficient to prove that he violated the terms of the protective order because the Commonwealth provided no credible evidence of any violation. Specifically, he contends that Ellis' credibility was flawed and her testimony contained "different and various inconsistencies."

In this Court's review of the sufficiency of the evidence to support a conviction, we will affirm the decision unless the trial court was plainly wrong or the conviction lacked evidence to support it. See, e.g., Calloway v. Commonwealth, 62 Va. App. 253, 260, 746 S.E.2d 72, 76 (2013). We do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "'Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Id. (quoting Jackson, 443 U.S. at 319). Further, the Court "'discard[s] the evidence of the accused in conflict with that of the Commonwealth.'" Johnson v. Commonwealth, 53 Va. App. 79, 99, 669 S.E.2d 368, 378 (2008) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). We review the challenge to the sufficiency of the evidence under these well-established legal principles.

The appellant contends that Ellis' testimony was flawed because she could not testify to the specific date of the offense and could not describe exactly how far away the appellant was from her during the transfer of the child. The appellant also points out that the only time she saw

him was when both parties were leaving the parking lot. Additionally, the appellant claims that Ellis exhibited bias and motivation to testify falsely, as demonstrated by her pursuing similar charges against the appellant in different jurisdictions. Finally, the appellant argues that Ellis' credibility is refuted by his "staunch denial" that the incident ever took place.

Essentially, the appellant suggests that Ellis' testimony was "inherently incredible" based on these "inconsistencies" in her testimony and the evidence provided by him. The claim is not supported by the law as applied to the facts in this case.

It is well established that "'[t]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses.'" Commonwealth v. Jackson, 276 Va. 184, 197, 661 S.E.2d 810, 816 (2008) (quoting Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985)). The conclusions drawn by the fact finder on credibility issues may be disturbed on appeal only if the appellate court finds that the witness' testimony was "inherently incredible []or so contrary to human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 300, 321 S.E.2d 202, 204 (1984). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" Ashby v. Commonwealth, 33 Va. App. 540, 548, 535 S.E.2d 182, 187 (2000) (alteration in original) (quoting Schneider, 230 Va. at 382, 337 S.E.2d at 736-37).

> So long as a witness deposes as to facts which, if true, are
> sufficient to maintain their verdict, then the fact that the witness'
> credit is impeached by contradictory statements affects only the
> witness' credibility; contradictory statements by a witness go not
> to competency but to the weight and sufficiency of the testimony.
> If the trier of the facts sees fit to base the verdict upon that
> testimony there can be no relief in the appellate court.

Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989). In short, "[p]otential inconsistencies in testimony" are resolved by the finder of fact. Towler v.

Commonwealth, 59 Va. App. 284, 292, 718 S.E.2d 463, 467 (2011). Additionally, "the testimony of a single witness, if found credible by the trial court and not found inherently incredible by this Court, is sufficient to support a conviction." McCary v. Commonwealth, 36 Va. App. 27, 41, 548 S.E.2d 239, 246 (2001).

Viewed in light of the applicable legal standards, Ellis' testimony established that prior to the transfer of the child, she saw a car associated with the appellant in the parking lot of the shopping center where the exchange was to occur, within 1,000 feet of where she was parked. After Ellis' child was delivered to her, she began to leave the parking lot, pausing at a stoplight at the exit. The appellant's vehicle was in front of her at the light. While waiting for the light to change, the appellant expressed exaggerated laughter and gestured to her in a threatening manner. He made the sign of a pistol with his hand and then pulled an imaginary trigger. The judge took judicial notice of the fact that, due to the size of the shopping center, the appellant would have been within 1,000 feet of Ellis' location anywhere in that lot.

Ellis' testimony, along with the judge's judicial notice of the size of the parking lot, established that the appellant, who was necessarily inside the vehicle during the transfer of the child, was in violation of the protective order by being within 1,000 feet of Ellis while in the parking lot.

The appellant correctly notes that Ellis was unable to give the court the exact date of the incident. She also could not describe on cross-examination how far away the appellant was during the transfer of the parties' child. However, Ellis' testimony demonstrating that she was unsure of some details of the incident does not render her testimony unbelievable nor does it render her inherently incredible. The trial judge had the opportunity to see and hear her testify, and any uncertainties about specific details of the incident went to the weight of her testimony, which the trial judge resolved in her favor when he found the appellant guilty. See Cuffee v.

Commonwealth, 61 Va. App. 353, 366, 735 S.E.2d 693, 699 (2013) (holding that inconsistencies in a witness' testimony "go toward the trial court's weighing of the credibility of the witnesses, a matter within its sound discretion").  The judge took judicial notice of the distance, which was consistent with Ellis' testimony on direct examination and her belief that the appellant was in violation of the order.

Regarding Ellis' uncertainty about the exact date of the incident,

> When time is not an element of the crime charged, the . . . verdict will stand if the evidence is sufficient to prove beyond a reasonable doubt that a crime occurred and that the defendant committed the crime, even though the evidence is such that there may be a reasonable doubt as to the day on which the offense occurred.

Marlowe v. Commonwealth, 2 Va. App. 619, 623-24, 347 S.E.2d 167, 170 (1986).  The Commonwealth was not required to prove the exact date of the incident in order to convict the appellant of this offense.  The record shows that the incident occurred in the parking lot during a transfer of the child while the protective order was in effect.[5]

The appellant further contends that Ellis' credibility is compromised because she exhibited bias and motivation to testify falsely due to the fact that she brought similar charges against him in Caroline County and Henrico County.  Again, the trial judge had the opportunity to consider Ellis' credibility as she testified.  The judge also heard the appellant testify regarding the context of the charged offense and the victim's alleged bias and motivation to lie.  The fact finder must decide "[t]he credibility of witnesses . . . weighing such factors as the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the

---

[5] The agreed-upon statement of facts, while reflecting that Ellis testified she was unsure about the exact date of the incident, also states that, "On or about October 20, 2013 . . . *the defendant delivered the parties' child to Maritta Ellis* at a shopping center in the Town of Ashland, Virginia." (Emphasis added).  The statement of facts, signed as seen as agreed to by both parties, therefore supports the finding that the appellant was in violation of the protective order.

- 10 -

truth and observing the things about which they testify, their interest in the outcome of the case, [and] their bias." Mullis v. Commonwealth, 3 Va. App. 564, 571, 351 S.E.2d 919, 923 (1987). The record makes clear that any alleged bias or motivation to fabricate was weighed by the judge and rejected.

Additionally, the appellant argues that Ellis' credibility is "seriously challenged" by his staunch denial that the incident occurred. However, it was well within the province of the trial court as trier of fact to determine who was telling the truth. It is clear in this case that the judge chose to believe Ellis' account over the appellant's self-serving testimony. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Finally, the appellant claims that the victim's testimony was inherently incredible, as a matter of law, because of inconsistencies in her testimony, her alleged bias, and his denial of the incident. However, as explained above, the trial court as fact finder weighed any possible inconsistencies and potential bias and found Ellis' testimony credible. For testimony to be inherently incredible, "it 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968) (quoting Burke v. Scott, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951)). It must be "so contrary to human experience as to render it unworthy of belief." Fisher, 228 Va. at 300, 321 S.E.2d at 204. Here, Ellis' testimony was not manifestly false or so contrary to human experience as to render it unworthy of belief. Therefore, her testimony was not inherently incredible as a matter of law.

Viewed in its entirety, the evidence was sufficient to convict the appellant of violation of the protective order prohibiting him of being within 1,000 feet from Ellis.[6] The trial court heard the testimony and observed the witnesses. The judge was free to accept the testimony of Ellis and reject that of the appellant. The record supports the trial court's credibility determinations and its conclusion that the appellant violated the terms of the protective order. The court's decision was not plainly wrong or without evidence to support it.

### III. CONCLUSION

The evidence was sufficient to support the conviction. Therefore, we affirm the appellant's conviction under Code § 16.1-253.2 for violating a protective order.

<u>Affirmed.</u>

---

[6] Based on our ruling that the appellant violated the protective order by being within 1,000 feet of Ellis, we do not address the Attorney General's alternate arguments that he violated the protective order's other provisions prohibiting (1) contact of any kind or (2) acts of family abuse.